WILLIAM C. TOMPKINS & Co., for use of SAMUEL W. OAKEY, vs. JOHN H. BENNETT, Adm'r of WILLIAM HALL, Deceased.— Error from Galveston County.

The discharge of a bankrupt under the act of the congress of the United States of 1841, "to establish a uniform system of bankruptcy," etc., is sufficiently shown by the production of a full exemplification of the proceedings of the court in bankruptcy, containing the order for that discharge; which proceedings are certified by the clerk under the seal of the court.

Fraud cannot be presumed; it must be actually proved, or be a conclusion from facts that will not admit of any other conclusion consistent with fair dealing.

To impeach a discharge in bankruptcy on the ground of fraud or concealment, the party to be affected should be previously notified by a distinct allegation, specifying the fraud or concealment.

This suit was brought to recover the balance of an open account, amounting to $9,545.17 alleged to be due from the defendant's intestate, Hall, to the firm of Tompkins & Co., late merchants of the city of New Orleans. The account was commenced on the 25th March, 1840, and continued until the 22d May, 1842. The suit was instituted in April, 1845. The petition alleged that the account had been duly presented to the administrator of Hall within the time prescribed by law, and payment demanded, but that the administrator refused to pay the same. The defendant filed his answer at the October term, 1845. He pleaded, 1st. A general demurrer. 2d. A denial of all and singular the facts set forth in the plaintiff's petition. And 3d. The discharge of his intestate in 1843, by the decree of the district court of the United States for the eastern district of Louisiana, under the bankrupt law of the congress of the United States of August 19, 1841.

The cause was tried at the May term, 1848. The demurrer does not appear to have been acted upon in the court below. At the trial the plaintiffs proved that they were merchants in New Orleans from the commencement of the year 1840 until 1843, and that Hall was a merchant residing and doing business in Galveston in 1840; that the account was rendered to Hall in

the fall of 1841, and in April, 1842; that he made no objection to it, and promised to make remittances as soon as he could make collections. The plaintiffs here rested their case.

The defendant in support of his plea of the discharge of his intestate in bankruptcy, offered in evidence an exemplification of the record of the proceedings had in the district court of the United States for the eastern district of Louisiana, in the case of Hall in bankruptcy, which was certified by the clerk of that court, under its seal. Among other proceedings contained in the exemplification of the record thus offered, was the following: "Decree of Discharge. June 16, 1843 — Present, the Hon. T. H. McCaleb. William Hall having filed his petition praying to be discharged in full from all his debts individually and as a member of the commercial firms of William Hall & Co., and of Hall & Todd, and for a certificate of such discharge, pursuant to the act of congress, entitled "An act to establish a uniform system of bankruptcy throughout the United States," passed August 19, 1841, and it being shown to the satisfaction of the court that the said bankrupt has *bona fide* surrendered all his property and rights of property, and that he has fully complied with and obeyed all the orders and directions which have from time to time been passed by this court, and has otherwise conformed to all the requisites of the said act; that proof of publication, according to the rules of this court, has been duly made, and notice given to the creditors; and it further appearing that no written dissent to the bankrupt's discharge has been filed by a majority in number and value of his creditors who have proved their debts, and no sufficient cause being now shown why the prayer of the petitioner should not be granted: It is therefore, by virtue of the act aforesaid, ordered and decreed by the court, that the said William Hall be and he is accordingly hereby fully discharged of and from all his debts owing by him at the time of the presentation of his petition to be declared bankrupt, to wit, on the 9th of February, A. D. 1843. It is further ordered that the clerk duly certify this decree under the seal of this court, and deliver the same to the bankrupt when demanded. (Signed) THEO. H. McCALEB, U. S. Judge."

The plaintiffs objected to the introduction of this testimony, and, the objection being overruled, they excepted.

The plaintiffs then introduced evidence to impeach the discharge in bankruptcy, which went to show that Hall was a citizen of Texas; deported himself as such from the time of his settlement at Galveston; voted, had a store in which he did business, and went to New Orleans on account of ill health a short time before his death, which was in March, 1844. The plaintiffs also offered to prove that Hall owned a storehouse in Galveston before he became bankrupt, and afterwards used and enjoyed it until his death, but this being objected to, it was not permitted to go to the jury. The proceedings in bankruptcy showed that Hall was in New Orleans on the 9th February, 1843, when his petition was filed; that he was there on the 10th March, 1843; and that he was there on the 16th June, 1843, when the decree of discharge was made; and it was admitted that he was a citizen of the United States previous to his settlement in Galveston. In the schedule of property rendered by Hall at the time he applied for his discharge, is an item in the following words: " Interest in house and lots in Galveston, value say $1,000;" and in the schedule of the property received and reported by the assignee, is the following: "all the right, title and interest of the bankrupt in and to a house and lots in Galveston, Texas;" which property in Galveston was afterwards, as appears from the assignee's account of the sales of the bankrupt's effects, sold to and purchased by Samuel W. Oakey for $400. There was a verdict and judgment for the defendant.

I. A. & G. W. PASCHAL for plaintiffs in error.

The court erred in admitting the evidence of Hall's discharge in bankruptcy in support of the plea.

The statute makes the decree and *certificate* the *evidence* of discharge. [5 vol. U. S. Statutes at Large, p. 441.]

When a statute prescribes one mode of evidence no other is allowable. The decree without the certificate is insufficient. The decree of the judge might have been made just as it was, and yet afterwards attacked in the same court for fraud, or be-

cause the bankrupt had not complied with all the lawful orders of the court, and the certificate consequently withheld and never delivered. It is for this reason that the certificate, and not the record of the proceedings, is made evidence of the bankruptcy.

The authorities establish the general principle, that the best and highest evidence which the nature of the case admits of must be produced or accounted for. That is always the best which the law prescribes, and the secondary can only be introduced upon some legitimate and recognized mode of failure. [1 Greenl. Ev. secs. 82, 534, 535, 536, 537; 1 Phill. Ev. 418; 1 Stark. Ev. 437; 5 T. R. 66; 2 Strange, 1109; 1 Peters, 591.] No such absence of testimony was pretended, or accounted for in this case.

There is a class of cases in which it has been ruled that nothing but the certificate is evidence of the bankrupt's discharge. [1 Bos. & Pull. 302; 1 Caine's N. Y. Rep. 487; 10 Mass. 23; 5 Mass. 248.]

The production of the certificate is a condition precedent to the bar, without which the creditors are not barred. The Texas statute is in accordance with this position. It provides only for the defendant "*producing a properly authenticated certificate.*" [Acts 1841, p. 143.] The statute knows only the "certificate of discharge," and not the record of the proceedings, which are public property and cannot be carried about with an individual for his protection. He could only have resorted to the record, by accounting for the loss of the certificate, and this could not be necessary in any case of bankruptcy under the laws of the United States, because, if no legal impediment existed, the clerk would at any time grant the certificate; and if there be any lawful reason for withholding it, to admit other proof of bankruptcy would be to allow the mischief complained of. It is therefore seen that upon general principles, upon the bankrupt act, and upon the statute of Texas, nothing but the certificate is admissible in evidence; and to admit the record was manifest error.

2d. The court erred in refusing the evidence offered to impeach the discharge, on the ground of fraud. The plea

alleges that Hall resided in New Orleans within the United
States of America on the 9th day of February, 1843. The
testimony showed that he resided in Galveston from the year
1840 until his death in March, 1844. This testimony was
competent under our system, which requires no special repli-
cation, and it shows such a fraud of the law as wholly to
destroy the validity of the proceeding in bankruptcy. We
contend, therefore, that the certificate was void, and wholly
inadmissible as evidence.

The bankrupt act of the United States was intended as a re-
lief to citizens of the United States. It defines the persons
entitled to its benefits. *"All persons whatsoever, residing in
any state, district or territory of the United States."* A
person not "residing within any state or territory of the
United States," who should falsely and fraudulently represent
that he was a citizen, and thus obtain the benefit of the act,
would be guilty of a fraud of the law, and the discharge would
be absolutely void. [1 Texas R. 748, 764; 6 Peters, 357; 3
Cond. U. S. 286; 4 Cond. U. S. 650.]

The judgment may be impeached for fraud, however well
founded the jurisdiction. [Story's Confl. secs. 597, 608; Starkie
Ev., pt. 2, secs. 77, 79, 83; 11 State Tr. 261; 20 How. State Tr.
538; 9 Mass. 462; 8 id. 273; 15 Johns. 121; 6 Wend. 447,
327; 5 Wend. 148; 1 Peters' C. C. R. 74; 1 Caines, 490.]

Federal jurisdiction, being limited, cannot be enlarged to
embrace *persons* or *things* not intended by the statute. Hall
did not come under the jurisdiction of the district court of
Louisiana, and probably for this very reason his certificate was
withheld, and certainly it would have been, if known to the
court. [4 Dall. 8; 9 Wheat. 539; 2 Howard, 243; 16 Peters,
95; 6 Howard, 36; 2 Cr. 126; 2 Bacon Ab. Error T.; 5 Bac.
"Void and Voidable."]

The exclusion of the testimony to show that Hall owned
real estate in Texas before his bankruptcy, and to the time of
his death, was error, because the bankruptcy in the United
States, then a foreign government, could not pass the real
property in Texas, and consequently the creditors should not

be barred of their remedy against such property. [Story's Confl. ch. 9 and 10.]

It being proven that Hall had acquired a domicile and exercised acts of citizenship in Texas, no sufficient evidence was adduced to authorize a presumption that he had regained his native domicile. [Story's Confl. sec. 57; 5 Vesey, 750, 788.]

The act of Texas of 1841, p. 143, only contemplated those who had become bankrupts before they emigrated to Texas. It was to that act alone that those who desired relief from their debts should have resorted, and the last proviso conclusively settles this question. "*Provided, however*, that said certificate shall not bar the rights of creditors upon proof *of fraud*, or *falsity of said oath.*"

Even the bankrupt act of the United States allows of the impeaching the certificate for fraud in any trial when the same may be pleaded.

If it be replied that the notice was not given in writing in this case, as contemplated by the act, we answer that this action was commenced before annexation, and it was therefore wholly unnecessary. The law of the remedy at the commencement of the suit must govern. [6 Howard, 550.] The right to plead this discharge, at all, depended upon the legislation of Texas, and not the law under which the certificate was obtained. In the absence of the Texas statute, a certificate of bankruptcy obtained in a foreign state could not be pleaded here. The plea, then, being only authorized by the Texas statute, it must be controlled by all its provisions, and the proof of fraud in reply to it was admissible. The fraud being established, the plea fell to the ground. [Story's Confl. sec. 340; 13 Mass. 1; 7 Mass. 77; 3 Caine's R. 154; 1 Dall. 229; 2 Johns. 198, 235; 7 Johns. 117; 3 Dall. 367; 5 Mass. 509; 10 Mass. 529; 12 Wheat. 213; 6 Peters, 348; 1 Peters' C. C. R. 74.]

WEBB for defendant in error.

The plea of the discharge of Hall in bankruptcy was fully sustained by the evidence, and presented a complete bar to the action. Every provision of the bankrupt law of the United

States was literally complied with.   [5 vol. U. S. Stats. at Large, 441.]

The objection that the document offered in evidence to prove the discharge was not *the certificate of discharge* which the law contemplated, as answered by the record [p. 37].   The law points out no form in which the certificate shall be given.   The judge adopts such form as to him seems best, carrying out the intention and substance of the law.   In this case, the judge made his decree granting the discharge, and ordered the clerk to certify it under the seal of the court, and deliver it to the bankrupt when demanded.   This decree, then, with the certificate of the clerk and seal of the court, was *the certificate of discharge*, and formed a part of the document objected to.

It was surely no objection to the certificate that it was accompanied by other matter, which, if not essential to its validity, was at least not repugnant to it, and which very satisfactorily explained the reasons for granting it.   The superfluous matter could not take away the intrinsic validity of that which was not superfluous.

The plaintiffs further sought to avoid the effect of this plea, by an attempt to impeach the discharge on the ground that Hall was not a resident of the district of Louisiana when it was granted; and because he owned real estate in Galveston before his discharge, and occupied and enjoyed it afterwards.

All the evidence offered to sustain the impeachment was allowed to go to the jury, except such as related to the ownership of the property in Galveston.   The jury, after hearing the evidence as to the residence of Hall, found for the defendant.   That was equivalent to finding he was a resident of Louisiana when he applied for and obtained his discharge; and it being upon conflicting testimony, it was conclusive as to that fact.

The whole of the testimony offered to impeach the discharge should have been ruled out, because the certificate could only have been impeached in the mode prescribed by the statute, for fraud or wilful concealment of property "*on prior reasonable notice specifying in writing such fraud or concealment.*   [5 vol. U. S. Stats. 444, sec. 4.]   No notice was given.   But if it

were proper to admit the evidence for the purpose for which it was offered, there was no error in rejecting that which was offered to prove the ownership of the real estate in Galveston, because being parol, it was not the best evidence of the fact. [1 Phil. Ev. 418 and notes; 1 Peters, 591, 596.]

If the discharge was good in Louisiana, it was good everywhere, especially in regard to this debt. The record shows that it was a debt contracted in the United States, to be paid in the United States, and a law of the United States declared it to be paid off and obliterated, so far as the bankrupt was concerned, by delivering up his property for its payment. When this suit was commenced, there was no existing debt between the parties. [Story's Confl. sec. 340.]

If, however, the proposition were admitted to the fullest extent, that acts under bankrupt laws have no extra-territorial validity, and that a discharge under the bankrupt laws of the United States could not be pleaded in bar to a suit commenced here previous to annexation, still upon another ground the plaintiff was not entitled to recover in this case, and the judgment must be affirmed. There is no proof that the account was presented to the administrator previous to the institution of the suit. The petition alleges that it was so presented, but that allegation being denied, it was essential to a recovery by the plaintiff that it should be proved. [Probate Law, 1840, p. 116, sec. 17; Graham vs. Vining, 1 Texas R. 639, 669.]

Opinion of the court by Mr. Justice LIPSCOMB.

The first point presented for our consideration by the plaintiffs in error, in which it is supposed by them that the court below erred, is in admitting the record of the discharge of Hall in bankruptcy, under the plea. The evidence objected to is an entire and full record of the proceedings of the district court of the United States for the district of Louisiana, on the petition of William Hall to be declared a bankrupt. Every thing appears to have been done in strict accordance with the requisitions of the bankrupt law. The petition of Hall was filed the 9th February, 1843, and the decree of the court was entered

on the 16th of June following, discharging the petitioner from all of his debts owing by him at the time of his petition to be declared a bankrupt: And it was further ordered, that the *clerk duly certify* the decree under the seal of the court, and deliver the same to the bankrupt, when demanded. The record then shows all the further proceedings required by the law, for the disposition of the assets of the bankrupt, by the assignee, and it is, at the conclusion, authenticated by the following certificate, to wit:

"Clerk's Office, United States District Court, } for the District of Louisiana. }

"I, Neidler R. Jennings, clerk of the court aforesaid, do hereby certify that the foregoing twenty pages contain a full and complete transcript of all the proceedings, pleadings and documents on file, and of record, in the bankruptcy of William Hall, number 710, on the docket of said court. I further certify that the interlineations contained in pages 6, 11, 12, 15, 19 and 20, are true and exact copies of the interlineations in the original papers aforesaid; that they are of the same number of words, and are placed in the same order as in said original papers. In testimony whereof, I have [L. S.] hereunto signed my name, and affixed the seal of the said court, at New Orleans, this fourth day of March, A. D. 1848.

"N. R. JENNINGS, Clerk."

"I, Theodore H. McCaleb, judge of the district court of the United States for the district of Louisiana, do hereby certify that N. R. Jennings, who signed the foregoing certificate, was and is the clerk of the district court of the United States for the district of Louisiana; that faith and credit are due and ought to be given to his attestation as such, and that the above is in due form. As witness my hand and seal at New Orleans, this fourth day of March, A. D. 1848.

"THEO. H. McCALEB." [L. S.]

I do not understand from the record, that the objection taken in the court below, to the admissibility of the record, went to the mode of its authentication. But it was contended that the de-

cree and certificate, as required by the act of congress to make full proof of the discharge, is not presented in the evidence offered. The part of the act relating to the degree of credence that shall be given to the discharge and certificate, will be found in the 4th section of the bankrupt law [5 vol. Statutes at Large, 444], and is in the following words: " And such discharge and certificate, when duly granted, shall in all courts of justice be deemed a full and complete discharge of all debts, contracts and other engagements of such bankrupt, which are provable under this act, and shall be, and may be pleaded as a full and complete bar to all suits brought in any court of judicature whatever, and the same shall be conclusive evidence of itself in favor of such bankrupt, *unless the same shall be impeached for some fraud, or wilful concealment by him of his property or rights of property, as aforesaid, contrary to the provisions of this act, on prior reasonable notice, specifying in writing such fraud or concealment.*" From the provision of the act just cited, I think there can be no doubt that the decree of dis- charge, attested by the clerk, would be conclusive evidence. But, to my mind, it is equally clear that the fact, of the mat- ters and proceedings in the case, being presented between the decree of the discharge and the clerk's certificate, cannot im- pair the conclusive character of such certificate. It is true, it would be more portable and convenient without having it con- nected with the balance of the record of the proceedings; but, at most, the part not absolutely required to be presented would be only surplusage. It must be borne in mind, that the law prescribes no particular form in which the certificate of the clerk shall be framed, and this may be the usual form of authenticating the most important fact, to wit: that the court had decreed the discharge, agreeably to the prayer of the peti- tioner. The certificate presented applies to all the proceedings in the particular case, and the decree, being a part of those proceedings, is embraced. The judge certifies that the clerk's certificate is in due form.

I can entertain no doubt but the record shows, fully and con- clusively, the discharge of the defendant's intestate, as far as it

was competent for the court to decree a discharge. I have said that I did not understand the objection went to the authentication of the record, because, if it was so intended, it should have been more explicit. I am not to be understood, however, as expressing any doubt as to the sufficiency of the authentication. It is true, if the evidence had been offered before the annexation of this state to the United States, the authentication would not have been sufficient to authorize it to have been read in evidence. [See Phillips *vs.* Lyon, 1 vol. Tex. Rep. 392; Wellborn *vs.* Carr, id. 469.] I will, however, return to the point made by the plaintiff's counsel, that a distinct certificate was required to notice one argument urged in his brief. He supposes " the decree of the judge might have been made just as it was, and yet the decree afterwards attacked in the same court for fraud, or because the bankrupt had not complied with all the lawful orders of the court, and the certificate, consequently, withheld, and never delivered." Now, such a presumption is repugnant to both the law and the record. After the decree, discharging the bankrupt, the court had nothing more to do with him. All that the law required of the bankrupt had been complied with and adjudicated, before the decree, and in that court the time had passed for charging him with fraud. Again, had there been any proceedings directing the decree of discharge to be suspended, and, consequently, the certificate, it would have been shown by the record that was given in evidence. But, to my reading of the bankrupt law, the court, sitting in bankruptcy, had no power or control over the certificate of the clerk, after the decree declaring the petitioner a bankrupt and decreeing his discharge.

I shall proceed to consider the next objection taken by the plaintiffs in error, that the court erred in refusing the evidence to impeach the discharge on the ground of fraud. It will be seen by the statement of facts, that the evidence offered by the plaintiff, and ruled out by the court, was this: " The plaintiff offered to prove, by a witness on the stand, that Hall owned real estate in Galveston, before the time of his discharge in bankruptcy, as set up by the defendant, and continued to own

and enjoy the same subsequent to said discharge." If the object of the evidence was to prove fraud in obtaining the discharge, it would not have conduced to that end if it had been received, because we cannot presume fraud. (It must be proven actually, or be a conclusion from facts that will not admit of any other conclusion, consistently with fair dealing.) That he owned property in Galveston previous to his discharge in bankruptcy was not a matter of controversy, and proved nothing, because his schedule, rendered and filed on his application to the court in New Orleans, showed that he did own such property, and it was included with his assets in the hands of the assignee. This was acknowledged, and needed not additional proof. The record read in evidence showed that it had been sold for the benefit of his creditors, and that it had been purchased by the party who claims, in this suit, to hold the equitable interest in the same sued for. The evidence could not have proved fraud at the time the certificate was obtained, because the bankrupt had rendered in the Galveston property in his schedule, and if he afterwards set up a fraudulent claim for the property, such subsequent fraud could not affect his discharge. Again, as this suit is brought by citizens of the state of Louisiana, on what is alleged by them to be a debt due to them, and the proceedings in bankruptcy formed a judicial proceeding of their own forum, I have no doubt that whatever restrictions may be placed by courts, extra-territorial, on bankrupt laws, that the parties in this suit were bound by the law. If so, the discharge could only be impeached for fraud, in the way provided by the law itself. This, it has been shown by the citation from the 4th section of the bankrupt law, is "*on prior, reasonable notice, specifying in writing such fraud or concealment.*" If the plaintiff had wished to impeach the discharge on the ground of fraud or concealment, the foundation should have been laid by alleging and specifying such fraud. This would have been notice to the defendant. There does not appear to have been but two points of law reserved for the consideration of this court. First, the admission of the record from the district court of the United States for the district

of Louisiana, objected to by the plaintiffs, and the objection overruled by the court; and I believe there was no error in so ruling. The second, the refusal to admit the evidence offered by the plaintiff, in which I have endeavored to show there was no error. The evidence of the bankrupt's residence in Galveston, his having voted there, and conducted himself as a citizen of the place, went to the jury without any instruction from the court. If the plaintiffs believed it to be of any consequence to their rights, they should have asked the court to have charged the jury on the law applicable to such a state of facts. Not having done so, nor moved for a new trial, even if the state of facts proven would have authorized a different verdict, it cannot now be revised. But, I apprehend, it would not have avoided the bankrupt's discharge if it had been admitted that he resided in Texas up to the time of his going over to New Orleans, and taking up a temporary residence there, for the purpose of seeking the benefit of the bankrupt law of the United States. It may have been the honest interpretation he put on the law, that he had a right to do so, and if wrong in his construction, the presumption is that his application would have been rejected by the court to which he had applied. Whether a temporary residence, or a permanent domicile, gave the right to the applicant, were questions that peculiarly belonged to that court, and, therefore, everything done on the part of the bankrupt is perfectly consistent with honesty and fairness.

On the trial in the court below, the judge was not called upon to decide on the legal effect of a foreign bankrupt law, out of the limits of its own territory. Whether it could affect real or personal property, one or both, belonging to the bankrupt in other countries, were questions not made, and therefore not responded to by the judge. Nor was he called on to decide on any conflict of claim between a citizen of Texas and one claiming under the bankrupt's assignment in the United States. Any discussion of those questions, now, would be traveling out of the record; and, in my opinion, violating the appropriate duty of an appellate tribunal. I mention this,

because much, perhaps the most, of the plaintiff's argument and authorities refer to those questions.

I consider it improper to decide those questions, for the reasons assigned. Besides, the decision of a court on a point not presented by the record, ought not to be entitled to the weight of an adjudged question, and perhaps would mislead the profession on those subjects.

On the whole, I believe the judgment ought to be affirmed, and, in this opinion, Chief Justice HEMPHILL concurs. The judgment of the court below is affirmed.

Mr. Justice WHEELER dissented from the opinion of the court as pronounced, but stated that he was not prepared to say that the judgment ought not to be affirmed. He was inclined to think it ought to be, for the reason that it was not proved at the trial that the account sued on was presented to the administrator previous to the institution of the suit. The fact, having been put in issue by the general denial of all the allegations in the petition, should have been proved, to entitle the plaintiffs to recover. It was expressly so decided by the supreme court of the republic, in the case of Cummings' Adm'r *vs.* Jones. [Dallam, 531.] And that decision was recognized and affirmed in the subsequent case of Daily *vs.* Chevallier. [*Ibid.* 555.]