### FRAZIER et ux. v. HOUSTON OIL CO. et al.

(Court of Civil Appeals of Texas. Galveston. Oct. 31, 1913.)

1. ADVERSE POSSESSION (§ 25*)—POSSESSION BY LESSEES.

Where the owners of land leased it under an instrument providing that in consideration for the use and occupancy, rent free, of the improvements, the lessee acknowledged himself to be a tenant of and in possession for the owner, and agreed to occupy and hold possession of the land, the tenant had the right to possession of the entire tract of land and could not, by limiting his occupancy to the inclosed land,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

limit his lessor's constructive possession of the entire tract.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 116–120; Dec. Dig. § 25.*]

2. ADVERSE POSSESSION (§ 13*)—WHAT CONSTITUTES.

One who has adverse, peaceable, and continuous possession of land for more than ten years acquires a prescriptive title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 65, 67–76; Dec. Dig. § 13.*

For other definitions, see Words and Phrases, vol. 1, pp. 227–235; vol. 8, p. 7568.]

Appeal from District Court, Hardin County; L. B. Hightower, Judge.

Trespass to try title by W. S. Frazier and wife against the Houston Oil Company and others. From the judgment, plaintiffs appeal. Affirmed.

Jno. L. Little, of Kountze, for appellants. Hightower, Orgain & Butler and J. D. Campbell, both of Beaumont, for appellees.

REESE, J. This is an action in trespass to try title by W. S. Frazier and wife against the Houston Oil Company, to recover the title and possession of 160 acres of land, part of the G. W. Brooks survey in Hardin county. Plaintiffs sought to recover upon a limitation title under the statute of limitation of ten years. It was agreed "that the record title was, from 1882 until about the first of 1890, in E. A. Irvin, and from then until about 1898 was in J. P. Irvin, and from that time until July 31, 1901, the record title was in the Texas Pine Land Association, and since the last-named date the record title has been in the defendant. E. A. Irvin and J. P. Irvin and the Texas Pine Land Association are all vendors of the defendant through whom the title passed into the defendant, who now owns all of it, unless the title to the land in controversy has been perfected in the plaintiffs by limitation at any time between the dates of 1875 and the time of the filing of this suit, and is thus owned by them." It was further agreed that plaintiffs' possession began in 1875. The evidence showed that plaintiffs had had actual possession by inclosure and improvements of 12 acres of the land, included within his inclosure. As to the remainder of the 160 acres, the defense rested upon constructive possession of the league in the several owners in defendant's chain of title through tenants, under leases, from 1883 up to the date of filing of the suit, thus limiting appellants' right of recovery to the land actually inclosed. The case was tried by the court, resulting in a judgment for appellants for this 12 acres and for appellees for the remainder. Appellees were adjudged to pay the costs. From the judgment appellants prosecute this appeal. Incidentally, appellants claimed that J. W. Hilton had cut and

removed timber from the land of the value of $50, which had been deposited with one Collier to await the event of the suit. For this sum appellees also had judgment.

The first, sixth, and eighteenth assignments of error are addressed solely to appellant's right to recover the 160 acres upon the evidence as to his actual possession under the ten-year statute, without reference to the evidence as to appellees' constructive possession of the entire league (except that actually inclosed) limiting appellant's right to recovery to the 12 acres; the questions arising upon this latter claim being presented by other assignments. As to these assignments, the undisputed evidence seems to bear out appellant's contention as to his adverse possession of the 160 acres sued for, and his right to recover the same, less the several tracts sold by him, except in so far as that right is limited by the constructive possession of appellee and its vendors as aforesaid.

[1] This brings us to the assignments of error from 8 to 11, also the thirteenth and fourteenth assignments of error, which complain of the action of the court in admitting in evidence certain lease contracts entered into by certain persons with the several owners in appellees' chain of title. Under these assignments appellant states the following proposition of law: "Where a tenant in possession of land is holding under a lease which describes the property as the 'premises' occupied by the lessee, or in any manner designates the property the tenant is to occupy, the possession of the tenant inures to the benefit of the landlord only to the extent designated in the lease, and the landlord has no constructive possession of the balance of the tract without the designated portion."

Each of the leases referred to was substantially to the following tenor and effect: "The State of Texas, County of Hardin. For and in consideration of the use, occupancy and enjoyment, rent free, of the house, field and improvements, now occupied by me and situated on the league of land in said county granted to G. W. Brooks on the 22d day of August, A. D. 1835, by the government of Coahuila and Texas, and in further consideration of the right granted me to make use of any timber necessary for firewood and to keep in repair the fence and house—part of the improvements, I acknowledge myself the tenant of, and to be in possession for, ———, the owner of said league of land and agree, as such tenant, to occupy and hold possession of said league of land."

These several lease contracts were executed, at different times, by different persons, to the respective owners of the land, to wit: J. P. Irvin, E. A. Irvin, the Texas Pine Land Association, and the Houston Oil Company. Clearly, under such a lease the

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

tenant had the right of possession of the entire league. His contract is that he "will occupy and hold possession of" the entire league. What is said with reference to the use, occupancy, and enjoyment of the improved portion is that, in consideration of his contract to occupy and hold possession of the league, he is to pay no rent for this improved portion. This does not have the effect of limiting his right of possession to the improvements. He is granted the special privilege, in connection with his occupancy of the league, to make use of any timber on it for certain purposes. In so far as this right to use the timber is restricted to certain purposes, this is not inconsistent with the right of the tenant to occupy and possess, to exercise dominion over, the entire league. The case does not fall within the doctrine of Land Co. v. Williams, 51 Tex. 51, Read v. Allen, 63 Tex. 154, Craig v. Cartwright, 65 Tex. 414, and other cases on this point, nor the proposition of law stated by appellants and quoted above.

In support of the foregoing proposition, appellants cite Houston Oil Company v. Kimball, 103 Tex. 105, 122 S. W. 533, 124 S. W. 85, as decisive of the questions arising upon the construction of these leases. In their argument, in the brief, they undertake to quote from the opinion in that case that possession under the lease there being discussed, and which appears to have been substantially identical with those in the present case, "does not establish possession of the entire league of land in the owners thereof." It is true that the language quoted appears in the opinion (at page 106 of 103 Tex., at page 539 of 122 S. W.), but not in the connection stated by appellants. We quote the entire paragraph to show the sense in which the language quoted was really used: "Hester was occupying a small portion of the land and the improvements thereon when the lease was executed, and continued to do so up to his death, which was within a year from the date of the lease. A short time after his death his wife and son sold the improvements to S. A. J. Haire, who did not in any way assume the tenancy contract of Hester. The proof shows that Haire and his son together did occupy the part of the land and improvements which had been in cultivation and which had been occupied by Hester, but there was no evidence that they asserted any right of possession either for themselves or the owner of the land to any other portion of the league. No doubt it is true that Haire could not have disputed the title in the Irvins to the portion of the land which he received possession of from Hester, but this does not establish the possession by Haire, nor by his son, or those who were claiming under them, of the entire league of land in the name of owners thereof, which is a necessary element in order to sustain the plea of limitation to the whole league." Haire was not in possession under any lease from the owner of the league. Hester had such contract, and was in actual possession, with improvements, of a part of the league under such lease. Haire simply bought Hester's improvements, but did not assume his lease contract. It was this possession of Haire which the court held did not establish the possession of the entire league in the owners thereof. There is at least an intimation in the opinion that if Haire had assumed the tenancy contract of Hester, and, a fortiori, if he had gone into possession under such a contract between himself and the owner, his possession would have been that of the owner as to the entire league. Having gone into possession under these leases, none of such tenants could have rid themselves of the obligation imposed upon them to occupy and hold possession of the entire league by merely limiting their actual possession, or their claim to the right of actual possession and dominion, to the inclosed land and improvements.

[2] The second proposition under said assignments is that "appellants, having had the peaceable, continuous, and adverse possession of the land, were entitled to the land embraced within their inclosure; such possession being for more than ten years." The proposition is sound. The trial court evidently thought so, as appellant was given judgment for all the land embraced in his inclosure, and for costs.

The agreement under which the case was tried, and which has been set out, eliminated every issue except that of appellant's right under the statute of limitation of ten years. This eliminates the questions sought to be presented by the remaining assignments, which became immaterial in the trial court and need not be considered here. The evidence was amply sufficient to support the judgment. It showed, it is true, actual possession in appellant of the 12 acres awarded to him by the judgment, with claim of title to the 160 acres sued for. By agreement this possession began in 1875. The evidence further showed, however, that beginning in 1883, and continuing up to the time of the filing of the suit, with possibly one or two short intervals of a year or two, there was actual possession by tenants of the respective owners of part of the league, under such leases as are herein described, the effect of which was to give the owners constructive possession of the entire league, except as to the 12 acres in the actual possession of appellant, for which they had judgment, and to limit appellant's claim under the ten-year statute of limitations to such portion.

We find no error in the judgment, and it is affirmed.

Affirmed.