WORD v. COLLEY et al. (No. 6697.)

(Court of Civil Appeals of Texas. Galveston. Dec. 3, 1914. Rehearing Denied Dec. 23, 1914.)

1. HUSBAND AND WIFE ☞248—COMMUNITY PROPERTY—CHARACTER OF TITLE.

The court in determining whether land is community property, must look to the inception of the title, and the character the title acquired relates to its origin.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 880; Dec. Dig. ☞248.]

2. EXECUTORS AND ADMINISTRATORS ☞388—SALE OF REAL ESTATE — TITLE OF PURCHASER.

Where a grantee in a bond for title executed by the sole heir of the deceased owner subsequently purchased the land at an administrator's sale pursuant to the order of the court directing the sale and confirming it, his title was founded on the administrator's sale.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1573–1582; Dec. Dig. ☞388.]

3. HUSBAND AND WIFE ☞249—COMMUNITY PROPERTY—CONVEYANCES.

Where a grantor conveyed during the lifetime of his wife a half interest in land to a grantee, who during the lifetime of the wife reconveyed the land, at least one-half of the land was community property of the grantor and wife.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 887, 889–892; Dec. Dig. ☞249.]

4. HUSBAND AND WIFE ☞274 — COMMUNITY PROPERTY—RIGHTS OF CHILDREN—SETTLEMENTS.

A father, at the death of his wife, conveyed to his children real estate in settlement of their interest in the estate of the husband and deceased wife as community property. The children at the time of the conveyance were infants, but, on attaining full age, acquiesced therein. The father at the time was executor

of his wife. *Held*, that the acceptance by the children of the conveyance was a settlement of their rights, and they had no interest in the community property.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1026–1031; Dec. Dig. ⊂⟩ 274.]

5. JUDGMENT ⊂⟩740—RES JUDICATA—QUESTIONS CONCLUDED.

A party in whose favor a judgment is rendered is not estopped, in a subsequent suit, from denying findings of the court rendering the judgment not essential or material to the judgment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1268; Dec. Dig. ⊂⟩740.]

6. ADVERSE POSSESSION ⊂⟩48—COLOR OF TITLE—NATURE OF POSSESSION.

Where a grantee of a league openly claimed title to it under a deed and paid taxes thereon continuously, and obtained judgments against squatters, who subsequently executed leases and remained in possession thereunder for more than ten years, the grantee acquired title to the entire league by adverse possession, though other persons entered on the property adversely until dispossessed by him.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 236, 237; Dec. Dig. ⊂⟩ 48.]

Appeal from District Court, Hardin County; L. B. Hightower, Judge.

Action by Horace Word against Thomas M. Colley and another. From a judgment for defendants, plaintiff appeals. Affirmed.

E. E. Easterling and H. M. Whitaker, both of Beaumont, Crow & Phillips, of Groveton, and H. G. Robertson, of Dallas, for appellant. Thos. B. Greenwood, of Palestine, for appellees.

PLEASANTS, C. J. This is an action of trespass · to try title brought by appellant against Mrs. Sarah Mary Elizabeth Colley and her husband, Thomas M. Colley, to recover an undivided one-half interest · in the W. N. Cox league of land in Hardin county.

The defendants answered by plea of not guilty and pleas of limitation of three, five, and ten years, and further specially pleaded, in substance, that if plaintiff ever had any cause of action against defendants for any portion of the land in controversy, "such cause of action was for a repartition of the estate of Thomas J. Word, deceased, and of his deceased wives, and that such cause of action, if any, accrued more than four years and more than ten years prior to the filing of this suit, and was and is barred by the statute of limitation of four and ten years."

Plaintiff by his second supplemental petition filed on the 30th day of September, 1913, set up:

"That in so far as the defendant Sarah Mary Elizabeth Colley may seek under her plea of 'not guilty' contained in her said answer to defeat plaintiff's suit by showing a legal or equitable settlement between T. J. Word and Horace and Anna Word of the community property and estate of T. J. Word, their father, and their deceased mother, Mary Ann Word, or such acceptance of conveyance on the part of Horace

and Anna Word from T. J. Word as to estop them from further claiming the community interest of their mother in said estate, or a partition of such community estate between T. J. Word and Horace and Anna Word, children of Mary Ann Word, deceased wife of T. J. Word, that said issues have been heretofore litigated and solemnly adjudicated between Horace Word, plaintiff herein, and Sarah Mary Elizabeth Colley, defendant herein, in that suit in the district court of Cherokee county, Tex., numbered 5082, and styled Horace Word v. Thomas M. Colley and Sarah Mary Elizabeth Colley, in favor of plaintiff, Horace Word, against Sarah Mary Elizabeth Colley, and that in said suit said issues were made by the following pleadings in said cause."

This petition then copied in detail the pleadings of both plaintiff and defendant filed in said cause in Cherokee county, Tex.; also the conclusions of fact and law reached by the court in said cause and the judgment of the · court therein. Plaintiff also, in reply to the statutes of limitation, pleaded that he was under the disability of insanity from the 1st day of January, 1885, until the 31st day of July, 1905, and the disability of minority of his grantor, Anna Word Collins, from 1856 to 1872, and the disability of coverture from 1872 to 1885.

Defendant by her second supplemental answer filed the 30th day of September, 1913, specially excepting on several different grounds to plaintiff's plea of res adjudicata contained in his second supplemental petition, and generally denied the allegations contained in plaintiff's said supplemental petition.

The trial in the court below without a jury resulted in a judgment in favor of defendants.

The evidence establishes the following facts: Plaintiff Horace Word and defendant Sarah Mary Elizabeth Colley are children of T. J. Word, deceased. T. J. Word had three wives. By his first wife, Mary E. Jackson, to whom he was married on July 14, 1840, he had four children, Justiana, who became the wife of H. J. Hunter, Sarah Mary Elizabeth, appellee, who became the wife of Thomas M. Colley, John J. Word, and Jeff Word. Mrs. Mary Jackson Word died in July, 1852. On July 12, 1853, T. J. Word married his second wife, Mary Ann Word, by whom he had three children, Horace Word, appellant, Anna Word, who became the wife of J. W. Collins, and James Stearns Word, who died in infancy before the death of his mother. Mrs. Mary Ann Word died on August 9, 1869, leaving a will devising her estate to her three children. In 1871 T. · J. Word married his third wife, Mrs. N. L. Jackson, by whom he had one child, Eoline, who became the wife of Jeff Reagan. The third Mrs. Word died in 1888 or 1889. T. J. Word died in 1890.

David Brown was the common source of title asserted by plaintiff and defendants. After his death his sole heir, on October 31,

1850, executed a bond for title to T. J. Word and John Smith for all of her right, title, and interest in and to the estate of her father, David Brown, in the state of Texas. The consideration for this title bond was $6,000, $1,300 cash, and the balance of $4,700 in two annual payments of $2,350, evidenced by two notes executed by T. J. Word and John Smith. All of this consideration was paid by T. J. Word. The last three payments, which were as follows: February 23, 1854, $2,283.45 cash; October 9, 1854, $531.24 cash; and January 20, 1855, $2,773 cash —were made after the marriage of T. J. Word with Mary Ann, the mother of appellant. On January 18, 1858, Wm. B. Frazier, the administrator of the estate of David Brown, and the husband of Mary E. Brown, conveyed to T. J. Word the W. N. Cox league in Hardin county, an undivided one-half of which is the subject-matter of this suit. This conveyance was made under order of the probate court, and recites a consideration of $20. The report of the sale by the administrator stated that the consideration for which the land was sold was $100. The sale was confirmed by an order of the court made on December 28, 1857. On the 8th of December, 1858, T. J. Word conveyed one-half interest in the W. N. Cox league, together with other lands, to George F. Moore, for a recited consideration of $20,000. On July 5, 1866, George F. Moore and wife, by R. A. Reeves, attorney in fact, conveyed a one-half interest in the W. N. Cox league to T. J. Word in consideration of other lands taken by them in partition.

On August 17, 1870, T. J. Word conveyed the W. N. Cox league, less 120 acres, to appellee Mrs. Colley by warranty deed. The consideration of this conveyance is stated in said deed as follows:

"In consideration of the sum of ten dollars to me in hand paid by my daughter Sarah Mary Elizabeth Colley, formerly Sarah Mary Elizabeth Word, the receipt whereof is hereby fully acknowledged, as in consideration of the community interest which her mother, my beloved wife Mary Elizabeth Word, during her lifetime, had in and to the league of land hereinafter described, the deed to which was made to me individually after the death of my said wife, though the purchase and a large part of the payment was made before her death, and also in consideration of the natural love and affection which I have and bear to and for my said daughter."

On the same day, August 17, 1870, he conveyed to each of his three children Justiana Hunter, Jeff Word, Jr., and John J. Word a league of land in Hardin county, for recited consideration in substance the same as those of the deed to Mrs. Colley.

On December 14, 1872, he conveyed to Horace Word and Anna Word a league and a half league of land in Hardin county, "in consideration of the natural love and affection which I have and bear for my two children Horace Word and Anna Word, as in consideration of the community interest which their mother, my departed wife Mary Ann Word, had and owned in my real and landed property and estate." The conveyance just mentioned was executed only a short time before the marriage of Anna Word to J. W. Collins, Jr., and when Horace Word was 19 years of age. But on April 25, 1876, when Horace Word was at least 22 years of age, he accepted and affirmed the above conveyance by mortgaging his half of the league and a half, and still later he and his sister, Anna, joined by her husband, both then being adults, sold and conveyed the entire league and a half of land.

Mrs. Colley has openly claimed to own the entire W. N. Cox league from the date of the conveyance of T. J. Word to her to the present time, and since 1898 she has alone successfully established, asserted, and defended her title as against numerous squatters and adverse claimants, through state and federal trial and appellate courts.

It was admitted that from and after the dates of the above-mentioned several deeds from T. J. Word no one has ever paid any taxes on the land conveyed, save and except that the grantee, or grantees, in each deed and his or their assigns have paid the taxes on the respective tracts conveyed to them, with Dr. Colley, husband of appellee Sarah, regularly paying all taxes on the W. N. Cox league from 1871 to 1911, inclusive.

On June 24, 1908, for a recited consideration of $500, Jeff Word conveyed to Horace Word all his "right, title, and interest as one of the heirs of my father, Thos. J. Word, and my mother, Mary E. Word, both deceased, in and to all lands and real estate owned by them in the state of Texas."

On May 2, 1904, for the recited consideration of $50 and love and affection, Anna Word Collins conveyed to Horace Word "all my right, title, and interest as an heir of my father, Thos. Jefferson Word, and my mother, Mary Ann Word (formerly Stearns), both deceased, in and to all land and real estate owned by them or either of them in the state of Texas. * * *"

On November 18, 1909, for the recited consideration of $50, Eoline Word Reagan and husband, Jeff D. Reagan, conveyed to Horace Word "all of our right, title, and interest in and to the lands and real estate owned by Thos. J. Word, deceased, in his lifetime, in the state of Texas, save and except the lands owned by the said Thos. J. Word in Freestone county, Tex., all of the lands in Freestone county being excepted and reserved from this conveyance. And it is expressly agreed and stipulated that by the acceptance of this deed the said Horace Word releases and relinquishes all claim in and to a certain tract of land in Freestone county, being part of the Simon Sanches grant, conveyed by the said Thomas J. Word to Mrs. M. L. Word."

On April 19, 1905, Sarah Mary Elizabeth Colley and Dr. Thos. M. Colley, for the re-

cited consideration of $1, conveyed to Horace Word "all of our right, title, and interest as heirs and beneficiaries of said Thos. J. Word and Mary E. Word above mentioned in and to all that certain tract, parcel, or league of land, situated in Polk county, state of Texas, patented or granted to Abner Mardez and sold by said Abner Mardez to David Brown, by deed dated November 25, 1837."

It was proven that there is now pending in the district court of Polk county a suit brought by Horace Word, as plaintiff, against G. W. Burkitt and others, as defendants, for the recovery of the title to, and possession of, the entire Abner Mardez league, and that Horace Word in his suit deraigns his title through the bond for title from Mary E. Brown to T. J. Word and John Smith, and through the various deeds hereinbefore set out from the other heirs of Thos. J. Word to Horace Word.

The present suit was not filed until February 27, 1911, which was more than 40 years after the date of the deed from Thos. J. Word to Mrs. Colley.

The first assignment of error assails the judgment on the ground that:

"The evidence being that the land in controversy, the W. N. Cox league, was conveyed to T. J. Word during his marriage with Mary Ann Word, and remained their community property until the death of Mary Ann Word, the mother of Horace Word and Anna Word (afterwards Collins), and Mary Ann Word having willed her estate to her two children, Horace and Anna Word (afterwards Collins), and Anna Collins having conveyed her interest in said estate to Horace Word, the court erred in not giving judgment in favor of Horace Word for one-half of the W. N. Cox league of land in controversy."

The last sentence in this assignment is a non sequitur. It does not follow that because the land was community property of the father and mother of plaintiff, and plaintiff's mother by her will left her estate to plaintiff and his sister, who conveyed her interest in the estate to plaintiff, that plaintiff was entitled to recover the land from appellees. To give this effect to the facts recited in the assignment is to ignore the evidence upon the issue of a settlement between plaintiff and his father of plaintiff's interest in his mother's estate, and also the evidence upon the issue of limitation.

[1, 2] Appellees contend with much force that upon the evidence before set out the land in controversy was not the community property of T. J. Word and the mother of plaintiff, but belonged to the community estate of T. J. Word and his first wife. This contention is based upon the proposition, which is well established by the decisions of our courts, that in determining the question of whether land is the property of a community we must look to the inception of the title, or, as expressed by Judge Gaines in the case of Welder v. Lambert, 91 Tex. 526, 44 S. W. 286: "The title relates to its origin, and must take the impress of its character from it." The cases of Manchaca v. Field, 62

Tex. 135, Creamer v. Briscoe, 101 Tex. 493, 109 S. W. 911, 17 L. R. A. (N. S.) 154, 130 Am. St. Rep. 869, and others which we might cite, announce the same principle. If the title of T. J. Word to the W. N. Cox league can be held under the facts before set out to have its inception or origin in the bond for title executed by Mary E. Brown to T. J. Word and John Smith, under the decisions above cited the land was not the community property of T. J. Word and plaintiff's mother, because the bond for title was executed and a part of the consideration therefor paid by T. J. Word before his marriage to plaintiff's mother. We are not inclined, however, to agree with learned counsel for appellees that it can be held that the title of T. J. Word had its origin in the bond for title. By this instrument Mary E. Brown, the sole heir of David Brown, deceased, contracted, for the consideration named therein, to convey to T. J. Word and John Smith all of her right, title, and interest in the estate of her father in the state of Texas, and upon the payment of the consideration stated in the bond the grantees therein, as against the grantor, acquired title to the lands of said estate, which included the W. N. Cox league. But this title was subject to the right of the administrator to sell the land for the payment of the debts of the estate. This the administrator was ordered to do by the court in which the administration was pending, and, acting under this order, the land was sold by the administrator, and the sale confirmed by the court. If some person other than T. J. Word had been the purchaser at this sale, his title would not have been in the least affected by the bond for title executed by the heir. In such case the effect of the sale by the administrator under order of the court would have been to destroy any right or title in the grantees of the bond for title, and it is difficult to see how the effect of such sale, when the grantee in the bond for title is the purchaser thereat, can be held a merely auxiliary in passing the title to the grantee in the bond for title.

[3] In addition to this, the facts show that T. J. Word conveyed a one-half interest in this and other lands to George F. Moore in 1858 for a consideration of $20,000, and that subsequently in 1866, before the death of plaintiff's mother, George F. Moore reconveyed the Cox land to T. J. Word. From this it seems clear that at least one-half of the land was community property of plaintiff's mother and T. J. Word. If, however, it be conceded that the land was a part of the community estate of T. J. Word and plaintiff's mother at the time of her death, we think judgment was properly rendered for the appellees upon both the issues of settlement between plaintiff and his father and the issue of limitation.

[4] The evidence before set out shows that after the death of plaintiff's mother he and his sister received from their father a league

and a half league of land in Hardin county in settlement of their interest in the community estate of their father and mother. The deed from T. J. Word to plaintiff and his sister to the league and half league recites that the conveyance is made in consideration of love and affection and of the "community interest of which their mother, my departed wife Mary Ann Word, had and owned in my real and landed property and estate." After plaintiff and his sister became of age they accepted and confirmed this conveyance by selling the land and appropriating the proceeds. There is no evidence that these lands were not equal in value to the land belonging to the community estate of plaintiff's father and mother, and · it appears both plaintiff and his sister for more than 30 years after the execution of said deed acquiesced in the claim of their father and his other heirs to all of the property of the community estate of T. J. and Mary Ann Word. We think this evidence amply sustains the finding that plaintiff and his sister accepted the league and half league conveyed to them by their father in full settlement of their interest in their mother's estate. The fact that T. J. Word, at the time he conveyed these lands to plaintiff and his sister, was executor of their mother's will, and that both of said children were minors, does not affect the validity of the settlement, because the evidence shows an acceptance and ratification of said settlement after both children became of age, by their act in selling the lands received by them and their long acquiescence in said settlement.

We cannot agree with appellant in his contention that the evidence sustains his plea of res adjudicata against appellees upon this issue of settlement.

[5] Upon the issue of res adjudicata the record discloses the following facts: In 1910 plaintiff in this suit brought a suit in the district court of Cherokee county against the appellees herein to recover an undivided one-half of a tract of land in said county which was owned by the community estate of T. J. Word and plaintiff's mother at the time of his mother's death. The defendants in that suit, appellees herein, in addition to plea of not guilty and pleas of limitation, interposed two special pleas in defense of plaintiff's suit. They first pleaded, in substance, that the community estate of T. J. Word and Mary Ann Word was indebted to the defendant S. M. E. Colley, and to secure the indebtedness T. J. Word, as survivor, on the 9th of November, 1875, executed a deed of trust on the land in suit, which deed of trust was foreclosed by a regular and valid sale of the said land, and that Mrs. Colley became the purchaser at such sale, and thereby secured title to the land. The defendants further pleaded that Horace and Anna Word, the children of Mary Ann Word, deceased, had accepted from T. J. Word, as and for their share in the community estate, a deed to a league and a half of land in Hardin county, Tex., dated December 14, 1872, and that thereby there had been a partition between them of the community estate of T. J. Word and Mary Ann Word, and that thereby the land in controversy, in that suit became the separate property of· T. J. Word, through whom, under a valid foreclosure and sale under a deed of trust given by T. J. Word, defendants had acquired title. Upon these issues the court, after setting out the facts in detail, found the following conclusions of facts.

"(1) T. J. Word and his wife, Mary A. Word, deceased, owned many thousands of acres of land, the exact amount of which is not made plain by the evidence, and their community estate was indebted, to the extent of which is not disclosed by the evidence.

"(2) T. J. Word conveyed small parts of the lands mentioned in the preceding paragraph to Horace Word and Anna Word Collins; but he did not undertake to make any complete or formal partition thereof. In accepting these conveyances Horace Word and Anna Word (Collins) had no reason to understand that they were accepting these lands in settlement of their interest in their mother's part of the community estate.

"(3) The land in question in this suit belonged to the community estate of T. J. and Mary A. Word.

"(4) The community estate of T. J. and Mary A. Word was at the time of the death of Mary A. Word, and on the 21st of April, 1870, and on the execution of the deed of trust on the land in controversy, indebted to Sarah Mary Elizabeth Colley in an amount sufficient to justify T. J. Word in executing the deed of trust on the community estate to secure its payment. I base this conclusion on the declaration of T. J. Word as made in the memorandum and note dated April 21, 1870, and the recitals in the deed of trust dated November 9, 1875, there being no other evidence to support the finding. But the character and intelligence of T. J. Word is shown to have been such that this statement of the facts as to the ownership of the negroes Bob and Aaron, and his indebtedness, being against his own interest, can be credited with more safety than can the few circumstances that point in another direction.

"(5) I find that the land in question was conveyed by deed of trust by T J. Word to secure the above-mentioned indebtedness of the community estate of T. J. Word and Mary A. Word; that it was thereafter sold to satisfy said indebtedness; and that defendants held whatever title was conveyed by such deed and trustee's sale."

The conclusions of law upon these facts were as follows:

"(1) The plaintiff and his sister, Anna Word (Collins), are not estopped by their action in accepting the conveyances of a portion of these lands made by T. J. Word.

"(2) There was no such partition of the estate of T. J. Word and Mary A. Word as to affect the rights of plaintiff. Neither is any right of plaintiff barred by any of the statutes of limitation pleaded.

"(3) The deed of trust executed by T. J. Word on the land in question for the purpose of securing the payment of a community debt owing by the estate of T. J. Word and Mary A. Word was a valid one, and the sale thereunder passed the title of the community estate to the defendant.

"Judgment is rendered for the defendant."

The judgment rendered and entered in said cause, after reciting the disqualification

of the presiding judge and the election of a special judge to try said cause, is as follows:

"The above entitled and numbered causes being regularly called for trial, the plaintiff and defendants appeared by their respective attorneys and announced ready for trial, and, no party having demanded a jury, the issues of fact and of law were submitted to the court, who, after hearing the pleadings and evidence and argument of counsel, and after due consideration, on this, the 30th day of January, 1911, finds that the defendant Mrs. Sarah Mary E. Colley has the superior title to the land sued for, and hence that plaintiff is not entitled to recover. Wherefore it is considered, ordered, and adjudged by the court that the plaintiff, Horace Word, take nothing by this suit, and that the defendants, Thos. M. Colley and Sarah Mary E. Colley (the latter having been sued herein by the name of Mary E. S. Colley), go hence without day, and recover of and from the plaintiff, Horace Word, all costs herein, for which let execution issue, and to the court's conclusions of fact and of law the plaintiff and the defendants each duly excepted in open court."

From this statement of the issues in the former suit, the conclusions of fact and law filed by the trial judge and the judgment rendered, it is clear that the conclusion that Horace Word and his sister had no reason to understand that they were accepting the lands conveyed to them by their father in settlement of their interest in their mother's part of the community estate, and that they were not estopped by accepting said lands from asserting claim to their mother's portion of said estate, was not material to the adjudication actually made in said suit. These were not matters essential to be determined in order to render judgment for defendants, and they did not enter into nor become a part of the judgment rendered. It is the judgment, and not the verdict or the conclusions of fact, filed by a trial court which constitutes the estoppel, and a finding of fact by a jury or a court which does not become the basis or one of the grounds of the judgment rendered is not conclusive against either party to the suit.

In 2 Black on Judgments, p. 609, the author states the rule of estoppel by judgment as follows:

"The force of the estoppel resides in the judgment. It is not the finding of the court or the verdict of the jury rendered in an action which concludes the parties in subsequent litigation, but the judgment entered thereon."

The fact that the judgment in the suit in Cherokee county was in favor of defendants precluded them from bringing in review the findings of the judge, and we cannot believe that a party can be estopped by a judgment in his favor from denying findings of the court rendering said judgment the decision of which was not essential or material to the rendition of the judgment. Philipowski v. Spencer, 63 Tex. 607; Sheffield v. Goff, 65 Tex. 358; Manning v. Green, 56 Tex. Civ. App. 579, 121 S. W. 725; Whitney v. Bayer, 101 Mich. 151, 59 N. W. 415; Cauhape v. Parke, Davis & Co., 121 N. Y. 152, 24 N. E. 186; 23 Cyc. 1227–1228.

[6] Upon the issue of limitation the following facts were shown: The deed from T. J. Word to Mrs. Colley to the W. N. Cox league was duly recorded in Hardin county on February 9, 1871, and she has openly claimed said league and paid all taxes thereon as they accrued since said date. In 1898, in a suit brought by Mrs. Colley in the district court of Hardin county, she recovered a judgment against a number of squatters who had previously settled on the league. After the rendition of this judgment a number of these squatters signed the following lease contract, which was proven for record and duly recorded in July, 1900:

"Know all men by these presents that we, the undersigned, all of the state and county aforesaid, do by these presents acknowledge that he (or she, as the case may be) is in the possession of the W. N. Cox league of land in Hardin county, said state, as the tenants of Mrs. S. M. E. Colley, of Anderson county, said state (the said Mrs. Colley being the wife of Dr. T. M. Colley), and each of the undersigned hereby agree to hold said possession as tenants of the said Mrs. S. M. E. Colley during the term of time from the date of this instrument until the 1st day of January, 1901, in consideration that no rent is to be paid to the said Mrs. S. M. E. Colley for the use or enjoyment of any of the said league now occupied by us, or either of us, for the term above mentioned. It is distinctly agreed and understood by all the parties hereto that on said 1st day of January, 1901, each of the undersigned will deliver said possession and premises to the said Mrs. S. M. E. Colley or to those acting for or holding title from her to said W. N. Cox league of land."

Possession of the land was held by the tenants under this lease for more than ten years before this suit was brought. During this tenancy, however, other parties entered upon the league and held small portions thereof adversely to appellees until dispossessed by them. These adverse holdings were four in number, and the lands actually occupied were 18, 20, 15, and 21 acres, respectively.

The evidence is sufficient to justify the conclusion that appellant was not of unsound mind during any portion of this occupancy of the league by appellees.

We think these facts sustain appellees' pleas of limitation of five and ten years. Under the lease contract above set out the grantees therein were tenants of the whole league, and their actual possession of the several small portions of the league upon which they had their improvements was sufficient notice of their claim under the lease contract to the whole of the league. Frazier v. Houston Oil Co., 161 S. W. 20.

The adverse character of appellees' possession as against appellant of the entire league was not destroyed by the entry and occupancy by trespassers of the small portions of the league above mentioned. This question was discussed and determined by the Court of Civil Appeals for the Fourth District in the case of Glover v. Pfeuffer, 163 S. W. 986. We concur in the views expressed in that opinion, and deem it unnecessary to add anything thereto.

What has been said disposes of all of the questions presented in the able brief of appellant. We have considered each of the assignments of error, and none of them should, in our opinion, be sustained. It follows that the judgment of the court below should be affirmed, and it has been so ordered.

Affirmed.