## HOUSTON OIL CO. OF TEXAS v. VILLAGE MILLS CO. (No. 208–3301.)*

(Commission of Appeals of Texas, Section B. May 10, 1922.)

1. **Courts** ⬅➡315—Where trustees before the court have requisite diversity of citizenship, held that federal court had jurisdiction.

Where a land association was not a partnership but a trust estate represented by three trustees authorized to handle property generally and to sue, prosecute, and defend suits without joining the cestui que trust or stockholders, and they were properly before the court in their respective capacities, and the record showed that they had the requisite diversity of citizenship, the federal court thereby had jurisdiction.

2. **Judgment** ⬅➡829(1)—In the absence of objection to jurisdiction, a judgment not appealed from not subject to collateral attack.

In an action involving title to land, where all the parties were actually before the federal court and made no objection to its jurisdiction, and the case proceeded to judgment and was not appealed from, held, that the judgment is binding and cannot be collaterally attacked.

3. **Judgment** ⬅➡829(1)—Federal court's judgment in trespass to try title held to estop defendant.

In an action in trespass to try title, a federal court judgment against defendants' predecessors in title, which was mutual, binding, and not unilateral, held an estoppel against defendant's claim.

---

**4. Estoppel ⬤⟼38—Grantor's after-acquired title inures to grantee.**

Where a grantor conveyed land by special warranty deed, grantor's after-acquired title under a federal court judgment inured at once to the benefit of such grantee.

**5. Judgment ⬤⟼747(4)—Decree that plaintiff take nothing is as effective as adjudging the land to the defendant.**

A judgment, in trespass to try title, decreeing that plaintiff take nothing by his suit, is as effective in the defendant's favor as though the land had been especially adjudged to the defendant.

**6. Judgment ⬤⟼701—Judgment against trustees of land association involving land title held binding on association.**

Where two of three trustees of a land association were made defendants in a suit involving title and the association's by-laws provided that a majority of the trustees could conduct and manage the property and business, a judgment against them would have bound the association.

**7. Judgment ⬤⟼502—Courts should presume that trustees named by plaintiffs as only parties in interest had authority to defend suit to recover land.**

Even if two of three trustees of a land association were not authorized to defend an action involving title, in view of the fact that plaintiffs had pleaded that the defendants there named were the only ones who had any interest in the land, or were authorized to manage the same, the court should go a long way to presume, in the absence of any contrary showing, that the two trustees had procured sufficient authority to defend the suit on behalf of the trust estate.

**8. Judgment ⬤⟼829(2)—In collateral attack upon a federal court judgment, it will be presumed that the court had jurisdiction.**

In a collateral attack in a state court, a federal court judgment is entitled to every reasonable presumption as to its validity, including the one that the court acquired jurisdiction of the cause and parties.

**9. Joint-stock companies and business trusts ⬤⟼17—Trustees of association selling land subject to bonds held not without authority thereafter to defend title to such land.**

Where trustees of a land association conveyed land subject to outstanding bonded indebtedness and were under duty to look after the payment of the bonds and to protect the property securing them from adverse titles, held, that their relationship to the property had not ceased, and a suit against them concerning title to the land was binding on the association.

**10. Courts ⬤⟼347—Pleading ⬤⟼252(2)—Distinction between state and federal practice as to effect of amended petitions.**

In the state courts, the amended original petition supersedes and replaces the original pleading, while in the federal court it is permissible to file a pleading supplementary to one already on file and to be considered as a part of it without the necessity of completely rewriting the whole instrument.

**11. Judgment ⬤⟼526—Where ambiguous, resort may be had to pleadings and entire record to determine intent.**

Where a judgment is ambiguous and possibly conflicting in its provisions, resort can be had to the pleadings and the entire record in order to ascertain the real intent and force of the judgment.

**12. Judgment ⬤⟼829(1)—Federal court judgment held not subject to attack for failure to dispose of interests of all parties.**

In an action in trespass to try title, a federal court judgment involving the title held not subject to attack, on the ground that it did not dispose of all the parties to the suit and hence was not final, but was ineffective as a basis of the acquisition of rights.

**13. Trespass to try title ⬤⟼27—Agent held not a necessary party in a suit involving principal's title.**

Although a contract provided in one place that a certain person should have a "two-fifths interest in real estate," where such interest was explained as being only an interest in the proceeds of sale for services rendered in selling the land, such person was not a necessary party in trespass to try title.

**14. Judgment ⬤⟼675(1)—Attorney of record claiming interest in client's property is bound by judgment against clients.**

An attorney of record claiming an interest in his client's property by contract is bound by a judgment against his client.

**15. Estoppel ⬤⟼3(2)—Attorney's asking in pleading that title be decreed in clients held an agreement that such judgment would satisfy his interest.**

Where an attorney of record in an action involving title to his clients' lands had a power of attorney to sell them for a fraction of the proceeds and he filed a petition alleging that his client was the sole owner of the league in question, his action in asking that title be decreed in his clients amounted to an agreement on his part that a judgment in their favor would satisfy his interests.

**16. Vendor and purchaser ⬤⟼231(11)—Recorded deed held superior to prior deed subsequently recorded.**

In an action in trespass to try title, a deed dated June 5, 1838, and recorded March 22, 1841, held under the law of 1836 (Early Laws 1731–1876, art. 263, § 40) and the facts in evidence to be the superior record title as against title claimed under a deed dated January 27, 1836, and not recorded until 1846, where purchase was not shown to have been made with notice of prior deed.

**17. Trespass to try title ⬤⟼44—Evidence held insufficient to raise issue of forgery of deed.**

In an action of trespass to try title, evidence held insufficient to require submission to jury of question of forgery of deed through which plaintiff derived title.

⬤⟼For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**18. Deeds ⊜⟹199—Evidence that one known as a forger of land titles was a relative of grantee held probably inadmissible.**

Evidence that one known as a forger of land titles was a relative of a grantee was probably inadmissible.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by the Houston Oil Company of Texas against the Village Mills Company and others, in trespass to try title, and, from a judgment for the plaintiff, the defendant Village Mills Company appealed to the Court of Civil Appeals, which reversed and remanded the case, and on rehearing certified the case to the Supreme Court (186 S. W. 785). Judgment of the Court of Civil Appeals reversed, and judgment of the district court affirmed.

H. O. Head, of Sherman, and Kennerly, Williams, Lee & Hill and Fred L. Williams, all of Houston, for plaintiff in error.

W. D. Gordon, E. E. Easterling, H. M. Whitaker, and Thos. J. Baten, all of Beaumont, for defendant in error.

POWELL, J. The nature and result of this case have been admirably stated by the Court of Civil Appeals in the following language:

"This was an action of trespass to try title, instituted by Houston Oil Company of Texas against the Village Mills Company, in which the D. C. Montgomery league of land in Hardin county was involved. The appellant, by cross-action, brought in the Maryland Trust Company, alleging that it was asserting some sort of lien or claim on the land by reason of a deed of trust executed for its benefit by the Houston Oil Company. In addition to this plea of not guilty, the appellant also answered that it had matured title under the three, five, and ten year statutes of limitation. The Houston Oil Company also alleged in its petition that, in addition to holding the fee-simple title to the land, it had acquired a good and perfect title under the three, five, and ten year statutes of limitation. After the evidence for both sides had been submitted, the court gave a peremptory instruction to the jury to render a verdict for appellees, which was done, and the judgment entered accordingly, from which the appellant has perfected an appeal.

"Appellee Houston Oil Company's title is deraigned as follows: Mexican government to D. C. Montgomery, one league of land August 29, 1835; D. C. Montgomery to Samuel Moore, warranty deed June 5, 1838; Samuel Moore, by attorney, to Mary E. Brown, August 10, 1849; Mary Brown Frazier and husband to T. J. Word, deed dated January 19, 1855; T. J. Word to George F. Moore, December 8, 1858; George F. Moore to Susan B. Moore, December 7, 1860; T. J. Word to Susan B. Moore, partition deed July 5, 1866; Susan B. Moore and George F. Moore to John P. Irvin, August 4, 1881; John P. Irvin to Texas Pine Land Association, December 11, 1891; Texas Pine Land Association, by its trustees, to Houston Oil Company of Texas, special warranty deed dated July 31, 1901, and also by deed of date December 5, 1914.

"Appellant filed an affidavit of forgery against the deed from D. C. Montgomery to Samuel Moore, of date June 5, 1838. Appellant's record title shows that it claims to have the fee in the league of land under the following instruments: Mexican government to D. C. Montgomery, August 29, 1835; D. C. Montgomery to Arthur Henry, deed January 27, 1836; Arthur Henry to Samuel Beresford, February 27, 1845; heirs of Samuel Beresford to W. W. Clippinger power of attorney February 19, 1901; heirs of Samuel Beresford, by attorney, to Brackin and Hooks, by deed dated March 28, 1914; Hooks and Brackin to Village Mills Company, April 7, 1914.

"The records and briefs are voluminous, and many assignments of error are presented, but the judgment of the lower court must be sustained, unless three contentions urged by the appellant can be successfully maintained, viz.:

"First. That the judgment of the United States Circuit Court at Beaumont in November, 1903, against the Beresfords, appellant's predecessors in title, was not valid and binding; that judgment having been interposed by appellees as an estoppel in this suit against the appellant's assertion of title to the land in question.

"Second. That the record in the case required a submission to the jury of the question of forgery of the deed from Montgomery to Moore, against which an affidavit of forgery had been filed.

"Third. That neither the three, five, or ten years statutes of limitation were established by the uncontroverted testimony in favor of appellees and those through and under whom they claim.

"We will therefore consider these questions in the order in which they are stated, rather than follow the numerical assignment of them as found in the briefs."

Upon consideration of the foregoing three major questions, the Court of Civil Appeals reversed the judgment of the district court and remanded the cause for a new trial. Its reasons in each instance will appear later as we proceed with our opinion. The opinion of the Court of Civil Appeals will be found in 186 S. W. 785–805.

The Houston Oil Company, upon proper application therefor, was granted a writ of error by the Supreme Court, and the case is before us for review and recommendation. We shall discuss the questions involved in the order adopted by the Court of Civil Appeals.

The judgment of the federal court, omitting the description of the land, which shall be considered at length by us, reads as follows:

---

⊜⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"In the Circuit Court of the United States for the Eastern District of Texas, at Beaumont.

"Richard Beresford et al. v. Texas Pine Land Association et al.　C. L. No. 94.

"November Term, November 26, 1903.

"Be it remembered that on this the 23d day of November, A. D. 1903, the above styled and numbered cause came on for trial, plaintiffs having previously dismissed their suit against Clarendon Harris and O. N. Nabors, whereupon the plaintiffs and the defendants all announced ready for trial, and a jury of twelve good and lawful men, consisting of Sevan J. Blanchette and eleven others, were impaneled and sworn according to law, who, after hearing the pleadings of the plaintiffs and the defendants, the evidence, the argument and the charge of the court, right away returned into court the following verdict, to wit:

" 'Richard Beresford et al. v. Texas Pine Land Association et al. C. L. 94. In the United States Circuit Court for the Eastern District of Texas. In the above cause, we, the jury, find a verdict for the defendant for the land and premises sued for.

" 'Sevan J. Blanchette, Foreman.'

"It is therefore ordered, adjudged, and decreed by the court that Mrs. C. M. Beresford, surviving widow of Richard Beresford, who died since the institution of this suit, Elizabeth Beresford, Samuel Beresford, J. Dale Beresford, Elizabeth Merderk, Sarah Radcliff, Dollie Cox, Augustus Bosche, William B. Ulrey, Gean E. Beresford, Lizzie Furst and her husband, Harry Furst, Eliza J. Beresford, Lillie B. Thompson, Edward Thompson, Jessie P. Hackett, and Charles D. Hackett, suing the defendants for the following described tract of land, to wit, * * * take nothing by their suit against the defendants, the Texas Pine Land Association and Thomas L. Nelson, Horatio R. Fletcher, and Francis Peabody, as trustees, and that said defendants and each of them go hence without day.

"It is further ordered, adjudged, and decreed that the said defendant, the Texas Pine Land Association, prior to the institution of this suit, was the owner in fee simple of the lands and premises sued for.

"It is further ordered, adjudged, and decreed that the defendants the Texas Pine Land Association and its trustees above named do have and recover of and from the plaintiffs in this cause all costs by them incurred by the defendants herein named, and the sureties on their cost bond, to wit, Edwin E. Stevens and W. W. Clippinger.

"It is further ordered and adjudged that the officials of the court do have their execution or executions against the plaintiffs and the defendants, respectively, for all unpaid costs by them incurred for which execution may issue."

Certified copy of above judgment was recorded in the deed records of Hardin county on January 24, 1906.

The petitions in above suit alleged the residence of all the plaintiffs in states other than Texas, and further alleged that three of the trustees of the defendant Pine Land Association resided in Massachusetts, and the other trustee in Texas.

Was above judgment valid and binding, so as to conclude the Village Mills Company from claiming this league of land? The latter company makes numerous attacks upon it, seriously contending that it is not bound by it, and, even if it was, the Houston Oil Company cannot claim any benefit under the judgment. We shall consider these various attacks upon this judgment in their turn, as presented by the Village Mills Company.

In the first place, defendant in error contends that the federal court was without jurisdiction to try this case, and submits, in that connection, the following proposition:

"When the record affirmatively discloses the fact that the court has no jurisdiction of the controversy, the judgment is a mere nullity, and can be collaterally impeached by any person interested, whenever and wherever it is brought in question. Hence, where the jurisdiction of the federal court depends upon the citizenship of the party, such citizenship, or the facts which in legal intendment constitute it, should be distinctly and positively averred in the pleadings. A joint-stock association, being a mere partnership, cannot be a citizen of a state within the meaning of the statutes of the United States. Therefore the federal court could not have jurisdiction of a suit brought by citizens of the state of Ohio against the Texas Pine Land Association, alleged to have its principal office in Harris county, Tex."

The proposition by defendant in error just above quoted is met by four counter propositions submitted by plaintiff in error. We shall discuss two of them only, for they are the ones upon which the Court of Civil Appeals overruled the contention of defendant in error and held that the federal court had jurisdiction to try the cause. We think the Court of Civil Appeals determined this point correctly, and their views are stated at length in 186 S. W., beginning about the middle of the second column on page 788 and extending to the middle of the second column on page 790.

[1] Briefly speaking, the Court of Civil Appeals held that the Texas Pine Land Association was not a partnership, but a trust estate, represented by three trustees, authorized to handle the property generally, and to sue, prosecute, and defend suits in their capacity as trustees, without joining the cestui que trust or stockholders; that the said trustees were properly before the court in their said representative capacity; that the record showed that such trustees had the requisite diversity of citizenship; that the federal court thereby had jurisdiction.

Above holding by the Court of Civil Appeals is not only sustained by the authorities it cites, but we refer also to the following cases: (1) Kerrison v. Stewart, 93 U. S. 155–160, 23 L. Ed. 843; (2) Dodge v. Tulleys, 144

U. S. 451, 12 Sup. Ct. 728, 36 L. Ed. 501; (3) Chase v. Bank, 89 Tex. 316, 36 S. W. 406, 32 L. R. A. 785, 59 Am. St. Rep. 48.

[2] In the second place, we quote as follows from the opinion of the Court of Civil Appeals:

"The decisions of the Supreme Court of the United States, Cutler v. Houston, 158 U. S. 423, 15 Sup. Ct. 868, 39 L. Ed. 1040, Evers v. Watson, 156 U. S. 527, 15 Sup. Ct. 430, 39 L. Ed. 520, Dowell v. Applegate, 152 U. S. 327, 14 Sup. Ct. 611, 38 L. Ed. 463, and Des Moines Navigation & Railroad Co. v. Iowa Homestead Co., 123 U. S. 552, 8 Sup. Ct. 217, 31 L. Ed. 212, seem to support appellees' theory that the judgment was only voidable, and not void; but since taking the view of this case that we do, we find it unnecessary to determine this question."

Upon a careful reading of the authorities just above cited by the Court of Civil Appeals, we conclude that the federal court judgment was voidable only and not void. The last authority—Railroad Co. v. Homestead Co., 123 U. S. 552, 8 Sup. Ct. 217, 31 L. Ed. 202—seems to us conclusive upon this point. All the parties were actually before the court and made no objection to its jurisdiction; the case proceeded to judgment and was not appealed from; it is binding and cannot be collaterally attacked.

For either or both of the reasons above stated, we think the lack of jurisdiction contention raised by defendant in error must be overruled. In a few words, we will say that defendant in error bases its attack on the federal court's jurisdiction solely upon the contention that the Texas Pine Land Association was a partnership and could not be sued in the federal court, unless all its members composing the alleged partnership were named defendants. We have already shown that the trustees of the association aforesaid had the power to sue and be sued, and that judgments in suits where they were parties would be binding upon all the stockholders. All of the latter expressly conferred such authority upon these trustees as shown by articles of their agreement set out in full by the Court of Civil Appeals in its opinion.

[3, 4] The next attack upon this federal court judgment by defendant in error is in the shape of a proposition as follows:

(a) The estoppel of a judgment must be mutual.

"In the application of the rule of res adjudicata, it is essential that its operation be mutual. Therefore, a party will not be concluded against his contention, by a former judgment, unless he could have used it as a protection, or as the foundation of a claim, had the judgment been the other way; and conversely, no person can claim the benefit of a judgment, as an estoppel upon his adversary, unless he would have been prejudiced by a contrary decision of the case." Therefore, the Houston Oil Company of Texas cannot claim the benefit of the judgment rendered in the case of Beresfords v. Texas Pine Land Association in the federal court at Beaumont, even though that court had jurisdiction of the case, as an estoppel upon the defendants in the instant case, because it would not have been bound by such judgment had it been in favor of the Beresfords.

(b) "Any final judgment rendered in any action for the recovery of real estate shall be conclusive as to the title or right of possession established in such action upon the party against whom it is recovered, and upon all other persons claiming from, through, or under such party, by title arising after the commencement of such action.

"But the title of the Houston Oil Company having arisen and been acquired before the commencement of the action of the Beresfords in the federal court, it was not concluded by the judgment rendered in that case, and hence the Beresfords, or those claiming under them, will not be concluded."

The plaintiff in error, answering the proposition just aforesaid, submits the following counter propositions:

First. "The judgment in favor of the trustees of the Texas Pine Land Association, in C. L. No. 94, Beresford et al. v. Texas Pine Land Association et al., bound the plaintiffs in that case, and appellant claiming through and under them by title arising after the commencement of such action, and inured to the benefit of the Houston Oil Company of Texas as the prior vendee of said trustees as fully as though it had been a party to that suit, the prior deed from the Pine Land Association to the Houston Oil Company of Texas being such (as was correctly held by the Court of Civil Appeals in this case) as was sufficient to convey the title subsequently acquired by the Texas Pine Land Association by virtue of said judgment."

Second. "The judgment for defendants, Texas Pine Land Association and its trustees, in C. L. No. 94, Beresford et al. v. Texas Pine Land Association et al., rendered November 26, 1903, in the United States Circuit Court for the Eastern District of Texas, at Beaumont, vested in said defendants whatever title plaintiffs in said action previously had as fully as if said defendants had been plaintiffs and had recovered judgment for the land involved against the Beresfords as defendants, and such title so vested by said judgment, if it had failed to pass to Houston Oil Company of Texas eo instanti by estoppel on account of the prior deed made to it by said trustees, would pass to the Houston Oil Company of Texas by the deed from the Texas Pine Land Association and its trustees, dated December 5, 1914."

The Court of Civil Appeals, upon the proposition of defendant in error now under consideration by us, overruled the counter propositions of plaintiff in error thereto, and held that this federal court judgment could not constitute an estoppel in favor of the Houston Oil Company.

The Court of Civil Appeals discusses this point at much length, commencing about the middle of the second column on page 790 of 186 S. W. and ending at the bottom of the first column on page 793 of said volume.

After very careful study of the authorities relied upon by all parties hereto, we have reached the conclusion that the counter propositions of plaintiff in error, under our Texas statute and decisions, are correct and should be sustained. and that it can claim the benefit of the Beresford judgment as an estoppel against defendant in error. We base our views in this connection upon the following authorities: Powell v. Heckerman, 6 Tex. Civ. App. 304, 25 S. W. 166; Kramer v. Breedlove (Tex.) 3 S. W. 561; N. Y. & Tex. Land Co. v. Votaw (Tex. Civ. App.) 52 S. W. 125; Rev. Statutes of Texas, art. 7758; Morris v. Short (Tex. Civ. App.) 151 S. W. 638; Lindsay v. Freeman, 83 Tex. 263, 18 S. W. 727; Baldwin v. Root, 90 Tex. 546, 40 S. W. 6; Van Rensselaer v. Kearney et al., 11 How. (52 U. S.) 297, 13 L. Ed. 715; Gordon v. Thorpe (Tex. Civ. App.) 53 S. W. 357.

No one will contend, of course, that a judgment creates estoppel in the absence of mutuality; its binding force cannot and must not be unilateral; it must be mutual. The Beresford judgment was mutual between the "parties thereto," and that is the "test."

It must be remembered that the Beresfords chose their own forum and selected their own time for litigating this title with the Texas Pine Land Association. In a trial before a jury, they lost fully and completely. They had their day in court. By the judgment of that court, the Beresfords before the court, and all claiming under them thereafter, were forever precluded from again questioning the title of the Texas Pine Land Association to this land. It occurs to us that it is a matter of no concern to the plaintiffs in the federal court suit as ·to whether the conveyance of the defendant in that suit to the Houston Oil Company, prior to the institution of said suit, passed this after-acquired title to the Houston Oil Company, or not. The Pine Land Association's title was established by said judgment as superior to that of the Beresfords, and it was no concern of theirs whether the Pine Land Association retained the benefits under its judgment, or thereafter conveyed them to another. It is enough to say that the Beresfords could no longer make any claim to this title as against the Pine Land Association. We think they were forever estopped by this judgment.

The Pine Land Association conveyed this property to the Houston Oil Company by a special warranty deed, and its after-acquired title under the federal court judgment inured at once to the benefit of its former grantee, the Houston Oil Company.

In depriving the Houston Oil Company of the benefit of this federal court judgment, the Court of Civil Appeals, in effect, admits is probably overruling the well-considered Texas case of Powell v. Heckerman, 6 Tex. . App. 304, 25 S. W. 166, which latter opinion was itself based upon the opinion of our Supreme Court in the case of Kramer v. Breedlove, 3 S. W. 561. The Court of Civil Appeals, in the instant case, says that, if above cases really intend to hold contrary to its own views, then they are against the great weight of authority.

We think the cases of Powell v. Heckerman and Kramer v. Breedlove, supra, are authority sustaining our view that the Houston Oil Company can claim the advantage of article 7758 of Vernon's Sayles' Revised Civil Statutes of this state as an estoppel of the claim of the Beresfords, or any one claiming under them, to the league of land in question.

[5] It is, of course, elementary that a judgment, in a suit of trespass to try title, decreeing that the plaintiff take nothing by his suit, is as effective in the defendant's favor as though the land in controversy had been expressly adjudged to the latter. See French v. Olive, 67 Tex. 401, 3 S. W. 568; Railway Co. v. McGehee, 49 Tex. 482; Land Co. v. Votaw (Tex. Civ. App.) 52 S. W. 125; Latta v. Wiley (Tex. Civ. App.) 92 S. W. 437; McAllen v. Crafts (Tex. Civ. App.) 139 S. W. 44; Hoodless v. Winter, 80 Tex. 638, 16 S. W. 427.

The judgment in the Beresford Case decreed that certain plaintiffs take nothing by their suit, etc. In doing so, it just as effectively decreed the title of the Beresfords into the Pine Land Association and its trustees, defendants, as if the judgment had gone further and expressly done so. Whatever title the Beresfords may have had became, under this judgment, the title of the Pine Land Association, and, as heretofore stated, the latter's title inured, at once, to the benefit of plaintiff in error, under its special warranty deed from the Pine Land Association.

But, if that be not true, then the surviving trustees of the association conveyed this league to the Houston Oil Company on December 5, 1914, by deed duly of record, and that deed was executed after the land association had recovered its judgment against the Beresfords in the federal court.

That these surviving trustees had the right to make a conveyance following up the former warranty deed executed by the land association cannot be seriously controverted, in our opinion.

[6] The next attack upon this Beresford judgment is the following proposition submitted by defendant in error:

"The judgment rendered in the federal court in the case of the Beresfords against the Texas Pine Land Association et al. is void and of no effect, because only two of the three former trustees, through and by whom the Pine Land Association acted, were ever brought before or submitted to the jurisdiction of that court, which was insufficient to confer jurisdiction as to said association or its trustees. The general rule of law is that, where there are sev-

eral trustees, the beneficiary is entitled to that security and protection which results from the care, oversight, and co-operation of all the trustees; and, where title to property is vested in three cotrustees, they all form, as it were, one collective trustee, and they must act or be acted upon in their collective capacity; this upon the theory that the estate of the trustees, being given to them to accomplish the purposes of the trust, must be regarded as an inseverable unit, and a judgment rendered in a case to which less than the whole of trustees were parties is absolutely ineffective as to the trustees and the cestui que trust."

This contention was not raised before the Court of Civil Appeals. However, plaintiff in error submits the following counter proposition thereto:

"The declaration of trust setting forth the terms upon which the property of the Texas Pine Land Association was held by the trustees provides: 'Art. 12. The trustees, by vote of a majority of the board, shall have full power as trustees, attorneys and agents, on behalf of said association, to do all things in their judgment necessary and precedent for the purchase and sale of land and the sale of stumpage therefrom, and the conduct and management of the property and business requisite and desirable for the purpose of said association, as hereinbefore set forth. * * *' And the record in this case shows that two of the acting trustees were parties to the case of Beresford v. Texas Pine Land Association, and in this collateral attack on said judgment it must be presumed that if there were any conditions precedent to their acting without the third trustee, the facts of that case authorized them to do so."

We think this counter proposition should be sustained. It is our view that, under the express terms of article 12 of the by-laws of the land association, two of the trustees, acting together, can bind the association. If not so by express terms, then it is clearly implied by reasonable construction. If so, the action of the two trustees is legal and binding. See Ratcliffe v. Sangston, 18 Md. 383–389. Also, Railway Co. v. McCaughey, 62 Tex. 271.

Two of these trustees were defendants in the Beresford suit. We think that they, acting together, could defend the suit, and that a judgment against them would have bound the Pine Land Association.

[7, 8] Even if the two were not authorized to act, we think, in view of the fact that plaintiffs had pleaded that the defendants there named were the only ones who had any interest in this land, or authorized to manage the same, that the courts should go a long way to presume, in the absence of any showing to the contrary, that the two trustees had procured sufficient authority to defend the suit on behalf of the trust estate. We are confronted here with a collateral attack on the solemn judgment of a federal court. We think that judgment entitled to every reasonable presumption as to its valid-

ity, especially against such an attack. We are in complete accord with Judge Stayton, who speaks as follows in the case of Kramer v. Breedlove (Tex.) 3 S. W. 561:

"The decree of the district court must be presumed to have been rendered after it acquired jurisdiction over every person to be affected by it; and that the record brought before us may be silent upon some matter touching the jurisdiction over some of the defendants, does not affect that presumption."

In that case, the attack was direct and not merely collateral.

[9] The next attack upon this judgment is the following proposition by defendant in error:

"When, on the 31st of July, 1901, the duly appointed trustees of the Texas Pine Land Association sold and conveyed to the Houston Oil Company of Texas the land involved in this suit, as well as other lands, their agency or trusteeship as to said lands was terminated, and they had no further power or control over said lands, or interest in them, and a suit against them filed after such termination would not affect or bind the beneficiary, the Texas Pine Land Association, and any judgment rendered for or against them would be a nullity."

Above proposition was not presented to the Court of Civil Appeals, although the Village Mills Company was appellant there. However, plaintiff in error submits the following counter proposition thereto:

"The relation of trustees cestui que trust between the trustees of the Texas Pine Land Association and those interested therein is not shown by this record to have terminated, for the relation continues until a final settlement is had."

We think the counter proposition is sustained by the uncontradicted evidence. The deed of July 31, 1901, from the Texas Pine Land Association to the Houston Oil Company, conveying several tracts of land, shows on its face that the conveyance was subject to a large outstanding bonded indebtedness, in favor of the American Loan & Trust Company of Boston. It is clear to us that it was the duty of the trustees of the Texas Pine Land Association to look after the payment of those bonds issued by the latter and to protect the property securing them from adverse titles, such as were asserted in the Beresford case. In the latter case, counsel for the Beresfords named the trustees as defendants, fully realizing, as we see it, that, in order to recover a valid judgment for the Beresfords, these trustees must be made parties defendant and bound by such judgment.

[10-12] The following proposition constitutes defendant in error's next attack upon the federal court judgment:

"It affirmatively appearing from the record that the judgment of Beresford v. Texas Pine Land Association did not dispose of all of the

parties to that suit, the judgment relied upon was not final, and is ineffective as a basis for the acquisition of rights thereunder; the statute being restricted to any final judgment rendered in any action for the recovery of real estate."

Plaintiff in error, in reply to the proposition just above quoted, submits a counter proposition as follows:

"From the judgment itself, and from the entire record, it is plain that it was the intention of the judgment rendered in this cause to dispose of all plaintiffs and all defendants. There not being shown any order dismissing any of the plaintiffs, it must be assumed that the failure to name some of the plaintiffs was a mere clerical error, which will be made apparent by a reference to the pleadings."

Quite a number of the Beresfords and their heirs instituted this suit in the federal court at Beaumont in 1901 against the Texas Pine Land Association and its trustees. In 1903, an amended petition was filed, adding, in the main, certain new parties, as heirs of the original plaintiffs who had died since the filing of the original petition. The practice in the federal courts with reference to amended pleadings is different from that in the state courts. In the latter, the amended original petition supersedes and replaces the original pleading. In the federal court, it is permissible to file a pleading supplementary to one already on file, and to be considered as a part of it, without the necessity of completely rewriting the whole instrument.

In the case at bar the latter practice was observed, as we see it. The record does not show that there was any dismissal entered as to any one named as party plaintiff in the original petition.

The record does affirmatively show that all plaintiffs and defendants announced ready for trial. Therefore it is clear that all parties were before the court and were to be bound by the result of the trial.

It is unquestionably true that, in one portion of the judgment decreeing that certain parties shall take nothing by that suit, the names of several parties plaintiff in the original petition were omitted. If that were the only recital in the judgment, it would very likely not bind the plaintiffs whose names were omitted. Under those circumstances, we do not think the courts would be authorized to say that the omission of some of the names was an oversight. But the judgment goes further and contains several other recitals. The verdict of the jury was a finding "for the defendants for the land and premises sued for."

Complying with the jury's verdict, the court, in its decree, adjudged that the Texas Pine Land Association, when this suit was instituted, was "the owner in fee simple of the lands and premises sued for."

241 S.W.—9

It will be remembered that there were two record titles emanating from the original grantee. The Beresfords claimed under one chain, and the Pine Land Association under the other. It was natural that these two record titles would clash in court. Just before bringing this suit in the federal court, no court had ever established by decree which was the superior title. In this federal court suit, the court decreed in favor of the Pine Land Association's chain of title. This decree was against all the plaintiffs, as was the further decree that the defendants go hence without day and recover of the plaintiffs in this cause all costs, etc.

Where a judgment is ambiguous and possibly conflicting in its provisions, resort can be had to the pleadings and the entire record in order to ascertain the real intent and force of the judgment. Reading the pleadings and the various provisions of the judgment, we are thoroughly convinced that the judgment in controversy intended to decree the real title to the land in suit into the defendants, and to establish the title of the latter as against all the plaintiffs, whether named in the original or amended petition. We think the judgment does dispose of all the parties and issues. It does not do so expressly in some of its parts, but it does do so, as we construe it, by necessary implication. Issues and parties can be disposed of in that way, as held in the cases of Trammell v. Rosen, 106 Tex 132, 157 S. W. 1161, and Tennison v. Donigan (Tex. Com. App.) 237 S. W. 229.

For other authorities which seem to us to sustain our view upholding the finality of this judgment as against all the plaintiffs, we refer to the following: Hays v. Yarborough, 21 Tex. 489; McKay v. Speak, 8 Tex. 376; Turner v. City of Houston (Tex. Civ. App.) 43 S. W. 69; Hodges v. Robbins, 23 Tex. Civ. App. 57, 56 S. W. 565, 567; 23 Cyc. 1102; 23 Cyc. 1101, par. A; Dunlap v. Southerlin, 63 Tex. 42; Halsell v. Chas. A. McMurphy, 86 Tex. 101, 23 S. W. 647; Wilson v. Nance, 11 Humph. (Tenn.) 189; 23 Cyc. 854; Rackley v. Fowlkes, 89 Tex. 616, 36 S. W. 77.

[13] Defendant in error's final attack upon said judgment is as follows:

"The plaintiff in error acquired no greater interest in the land in controversy than that which was vested in the parties concluded by the federal court judgment, which in this case is affirmatively shown not to exceed 1,416¾ acres."

In discussing the finality of the federal court judgment, we have held that all the Beresfords and their heirs were before the court; that the judgment in favor of the defendants was effective against all of said plaintiffs. If we are correct in that holding, then the federal court judgment vested the entire league in the defendants, unless an alleged interest in W. W. Clippinger, an at-

torney for the Beresfords, was not included.

Certain of the Beresfords on February 19, 1901, about 9 months before the federal court suit was filed, executed a power of attorney to W. W. Clippinger, authorizing him to handle this land to a certain extent. On the same day, these same Beresfords and Clippinger entered into a' contract as follows:

"That in consideration of valuable services rendered and hereafter to be rendered by the party of the second part for the parties of the first part, said parties of the first part hereby sell and convey to the party of the second part, as compensation for said services rendered or that may be hereafter rendered, an undivided ⅖ interest in real estate situate in Hardin county, Texas, same as described in power of attorney of even date herein given by the parties of the first part to party of the second part. This agreement being made in connection with the power of attorney given by the parties of the first part to the party of the second part, dated February 19, 1901, to which power of attorney reference is hereby made and made a part of this agreement. Said párty of the second part is to use his best efforts in making a sale of said real estate herein described, and out of the proceeds of said sale said parties of the first part are to receive ⅗ of said amount and the party of the second part to receive ⅖ of said amount of any sale so made."

Plaintiff in error, referring to this Clippinger claim, submits the following counter proposition:

·"W. W. Clippinger did not acquire by his power of attorney and contract with the Beresfords any legal or equitable estate in land, or any part or portion of the tract of land here in controversy, undivided or otherwise, but only a right to take possession of and sell same in the name of the Beresfords, and not otherwise, and upon any sale so made to receive as compensation for his services two-fifths of the proceeds of such sale, not any fee in the land."

If Clippinger had no interest in this land itself, he was not a necessary party to this suit. We think the counter proposition just quoted is a correct construction of the Clippinger power of attorney and contract, and that his interest in the property was subject to the Beresfords' title being upheld in the courts. In that event, the land could be sold and he would be entitled to two-fifths of the proceeds of such sale.

It is true that the contract just quoted provides in one place that Clippinger shall have a "two-fifths interest in real estate," referring to this league in suit. But the character of that interest is carefully and fully explained in that same instrument. It was an interest in the proceeds of sales of this land. His interest was to vest in the nature of money upon the sale of the land or any part thereof. When the federal court judgment vested the land in the Pine Land

Association, Clippinger's possible commissions from sales under the Beresfords were lost to him.

[14] But if we are mistaken in our construction, as aforesaid, of the Clippinger power of attorney and contract, then we think the latter is still bound by the federal court judgment. In this connection, plaintiff in error submits the following counter proposition:

"If Clippinger acquired any title to any part of the Montgomery league of land here in controversy by his power of attorney and contract from the Beresfords, nevertheless, the· proceedings and judgment in C. L. No. 94, Richard Beresford et al. v. Texas Pine Land Association et al., was equally binding upon him as if he had been a formal party plaintiff to said suit. Clippinger was an attorney of record and a surety on the cost bond of the plaintiffs in the case aforesaid, and, under the facts shown by this record, was bound by the judgment therein."

Clippinger was in possession of his power of attorney and contract. He is assumed to have been familiar with their contents. With these instruments in his hands, he and other counsel filed this Beresford case, alleging that the Beresford plaintiffs were then "the owners in fee simple and entitled to possession of the following described tract of land" (the entire Montgomery league). Clippinger made cost bond for plaintiffs, signing as a surety thereon. The judgment was against him on the cost bond.

[15] Clippinger's allegations in the petition he filed alleging that his clients were sole owners of this league showed one or the other of two things: That he interpreted his power of attorney and contract as we have done in this opinion; or, he made a false statement in his pleadings. In the latter event, he should be estopped now from claiming any advantage resulting therefrom. His action in asking that title be decreed in the Beresfords amounted to an agreement on his part that a judgment in their favor would satisfy his interest.

Clippinger could have set up his interest in this property and joined as a party plaintiff. He had a possible beneficial interest in the property. He did not see fit to do so, but pitched the fight upon the theory that his clients owned all the land. He lost in a bona fide contest which he, himself, directed. We see no reason why he should now have a "second bite at the cherry."

We think the authorities sustain us in holding that Clippinger, under the facts of this case, is bound by this Beresford judgment. We shall refer to a few of the cases upon this point.

The Court of Civil Appeals at San Antonio, in the case of Jackson v. West, 22 Tex. Civ. App. 483, 54 S. W. 298, held that where the beneficial owner of a promissory note permitted the legal holder thereof, with her knowl-

edge and consent, to bring an action thereon against the maker and endorser, she was bound and estopped by the judgment rendered in such suit. That court cited, in support of its said holding, the following authorities: Jones v. Butler (Tex. Civ. App.) 42 S. W. 367; Schauer v. Beitel's Executor, 92 Tex. 601, 50 S. W. 931; Grounds v. Sloan, 73 Tex. 662, 11 S. W. 898.

In this connection, we quote as follows from a very strong opinion by the United States Circuit Court of Appeals at New Orleans, delivered by Judge Pardee in case of Hauke v. Cooper, 108 Fed. 922, 48 C. C. A. 144:

"'Neither the benefit of judgments on the one side, nor the obligations on the other, are limited exclusively to parties and their privies. Or, in other words, there is a numerous and important class of persons who, being neither parties upon the record nor acquirers of interests from those parties after the commencement of the suit, are nevertheless bound by the judgment. Prominent among these are persons on whose behalf and under whose direction the suit is prosecuted or defended in the name of some other person. As is illustrated by the case of trustee and cestui que trust, the real party in interest cannot escape the result of a suit conducted by him in the name of another. The fact that an action is prosecuted in the names of nominal parties cannot divest the case of its real character, but the issues made by the real parties, and the actual interests involved, must determine what persons are precluded from again agitating the question, and who are estopped by the previous decision. Whenever one has an interest in the prosecution or defense of an action, and he, in the advancement or protection of such interest, openly takes substantial control of such prosecution or defense, the judgment, when recovered therein, is conclusive for and against him to the same extent as if he were the nominal, as well as the real, party to the action.' Section 174, Freem. Judgm."

A similar rule is stated by Greenleaf in his treatise on the Law of Evidence (volume 1, § 523).

This principle is re-announced in the Texas case of Cleveland v. Heidenheimer (Civ. App.) 44 S. W. 551. It is there held that where the assignees of a chose in action employ an attorney who brought the suit in the assignor's name, and with the assignees' consent, such assignees were bound by the judgment therein rendered. This is direct authority that Clippinger, employing attorneys to bring the Beresfords' suit in the Beresfords' name, would be bound, and certainly under the same principle, he, bringing the suit himself, as an attorney, must be bound by the judgment in that case.

In the case of Folger v. Palmer, 35 La. Ann. 743, it was held that a party is bound in a suit in an individual capacity by declarations made in his pleadings in a suit in his representative capacity.

Upon the effect of Clippinger's allegation in the petition that the Beresfords were sole owners of this land, we think the cases of McClellan v. Hurd, 21 Colo. 197, 40 Pac. 445, and Roby v. Eggers, 130 Ind. 415, 29 N. E. 365, are very much in point and largely conclusive in estopping Clippinger from now claiming the land. In the latter case, it was held that a party could not later make any claim inconsistent with an abstract of title he had filed showing title in another. In the case at bar, Clippinger went further than that, and affirmatively alleged title in others.

Summarizing the aforesaid holdings, we are of the view that all the Beresfords and Clippinger are concluded by the federal court judgment, and that the same is true of the defendant in error, which claims under them. If we are correct in this view, then the Houston Oil Company, by virtue of this federal court judgment, became vested with this so-called senior record title. Owning the junior title, beyond any question, we think plaintiff in error entitled to an affirmance of the judgment of the district court, as the owner of both record titles, and we so recommend.

Counsel for defendant in error, in briefs filed with us, seem to concede that all the Beresfords and their heirs who were named as plaintiff either in the original or amended petitions were still in court as such plaintiffs at the time of the final trial. We think, under the federal practice, this is correct. And, so believing, we have heretofore made our recommendation accordingly. But, if we are incorrect in this view and it should be held by the Supreme Court, in line with the practice in the state courts, that the amended petition superseded and took the place of the original petition, then the judgment in the case was certainly a final one beyond any question, for it expressly disposed of all the parties and issues before the court under said amended pleading. In that event, the Houston Oil Company is entitled to a considerable portion of the league, which can be easily figured. In any event, we think effect must be given to the Federal Court judgment to that extent.

We think what we have already said disposes of the case and renders unnecessary a decision upon the other points presented. But, if we are mistaken in our judgment as to the effect of the federal court judgment, then we think the judgment of the district court, awarding the land to the plaintiff in error, should be affirmed for the two other reasons we shall hereafter discuss.

[16] In the first place, we think, even if the federal court judgment is eliminated, that the superior record title is in the Houston Oil Company. As already stated, the Beresford title came down from what might be termed the senior title, which had its be-

ginning in a deed from the original grantee to Arthur Henrie, dated January 27, 1836. This deed was not placed of record anywhere until 1846.

The Houston Oil Company claims under what might be termed the junior title which had its beginning in a deed from the original grantee to Samuel Moore, dated June 5, 1838, and duly recorded March 22, 1841.

While the Houston Oil Company's title is junior in the sense above shown, it is nevertheless true that under the law of 1836 (Early Laws of Tex. 1731–1876, article 263, § 40), and, under the facts in evidence, it became the superior record title, because the Village Mills Company did not show that Moore purchased with notice of the prior deed out of the original grantee, or that he bought without paying value for the land. See Houston Oil Co. v. Kimball, 103 Tex. 101, 122 S. W. 533, 124 S. W. 85.

[17] The Court of Civil Appeals very correctly holds this to be true and admits that the superior record title to this land, irrespective of the federal court judgment, is in the Houston Oil Company, unless the said deed from the original grantee to Moore was a forgery, as was charged in the statutory affidavit to that effect filed in the case at bar by one of the attorneys for the Village Mills Company. The Court of Civil Appeals correctly held that the judgment of the district court should be affirmed, upon this ground, unless there was sufficient evidence in the record of the forgery of this deed to require the submission of that issue to the jury.

The Court of Civil Appeals discusses this Montgomery-Moore deed of 1838 at considerable length in its original opinion, beginning near the bottom of the second column on page 793 of 186 S. W., and extending to the first paragraph of the second column of page 795 of said volume. In closing that discussion, the Court said that the age of the deed, its prompt record, etc., constituted prima facie proof of its validity and shifted the burden on the Village Mills Company to show that it was a forgery.

After so holding, however, the court say that the latter company sought to do this, and introduced "circumstances" sufficient to raise a fact question for the jury upon this issue of forgery.

On motion for rehearing, the Houston Oil Company asked the Court of Civil Appeals to set out such circumstances as it had in mind. The court proceeded to do so, in its opinion on rehearing, and this part of the opinion can be found beginning near the top of the first column of page 797 of 186 S. W., and extending through the first column of page 798 of that volume.

We have carefully considered this testimony and are of the view that it is not sufficient to raise the issue. The circumstances are not inconsistent with the genuineness of Montgomery's signature to the deed to Moore. Most of the circumstances are remote as to the time of its execution, and affect neither the grantor nor grantee in the deed. We do not think they have any probative force whatever in establishing said deed as a forgery. If a deed of this kind can be set aside by such circumstances as these, then we do not think any deed is safe nor any title secure. In The Henry Ewbank, 11 Fed. Cas. p. 1166, No. 6376, Judge Story, quoted by Judge Moore, says:

"It is not the habit of the courts to yield themselves up in the matter of right to mere conjectures and possibilities."

We think this rule very apt in this case. The case of Oil Co. v. Kimball, 103 Tex. 94, 122 S. W. 533, 124 S. W. 85, is considerably in point as sustaining our views of the failure of the evidence to raise the issue of forgery in this case.

Our Supreme Court, in the case of Tompkins v. Bennett, 3 Tex. 47, says:

"We cannot presume fraud. It must be proven actually, or be a conclusion from facts that will not admit of any other conclusion, consistently with fair dealing."

We think the same rule should apply to forgery. If it is not established by actual evidence, the circumstances introduced should be such as to admit of no other conclusion than that the forgery was committed.

It so happens that another case, almost identical with the one at bar, involved this same issue. We refer to the case of Hanks v. Houston Oil Co. (Tex. Civ. App.) 173 S. W. 635. In that case a deed was attacked as a forgery. The trial court gave a peremptory instruction, ignoring the forgery issue, and upon the basis that the attacked deed was valid. The Court of Civil Appeals affirmed the judgment, and the Supreme Court refused a writ of error.

In discussing the circumstances by which the forgery was sought to be established in that case, the Court of Civil Appeals in the Hanks Case said:

"The plaintiffs assumed the burden of proving the forgery, and introduced a mass of evidence, which we have closely scrutinized, but which we think was wholly insufficient to raise the issue, because it consists of negative, disjointed circumstances, not inconsistent with the genuineness of the deed. Much of the testimony offered by appellants upon this issue was rejected by the court, and of this they complain by an appropriate assignment of error; but after careful consideration we have reached the conclusion that, if the rejected evidence had been admitted and added to that which was admitted, it would have been not more than sufficient to raise a surmise or suspicion that the deed had been forged, and wholly insufficient to require the submission of the issue to the jury."

The Court of Civil Appeals, in the case at bar, admits that the circumstances in this

case and the Hanks Case are similar in the main, but points out two or three differences which it says distinguish the cases. We submit that these distinguishing features, described by the Court of Civil Appeals, are of no material importance.

In this connection, we have read the brief filed in the Court of Civil Appeals by the Village Mills Company in the Hanks Case, which appears among the papers in this record, and which was considered in the case at bar by the Court of Civil Appeals, and we think all will concede that the facts establishing forgery, in the Hanks Case, were, at least, as strong as the ones in the instant case.

We can only say, in summing up our views of the case at bar on this point, with the court in the Hanks Case, that the circumstances relied upon to establish forgery are negative and disjointed and not inconsistent with the genuineness of the deed from Montgomery to Moore.

[18] As a matter of fact, the most suspicious circumstances offered in evidence against this Montgomery-Moore deed relate to the activities of one David Brown, an alleged forger of land titles whose only connection with Montgomery or Moore was his relationship to the latter, and the fact that, before the deed in controversy was executed. he had left Moore in South Carolina and come out to Texas. We seriously doubt the admissibility of this testimony as to the general reputation and activities of Brown. We have found no Texas case holding such testimony admissible. The only authority in Texas we have found goes only far enough to hold that the reputation of the vendee in the deed attacked as a forgery is admissible.

On the other hand, in the Hanks Case, supra, this evidence of general reputation of Brown was excluded by the trial court, as well as evidence of a lot of outside deeds, and the judgment of the trial court was affirmed by the appellate court and writ of error denied by the Supreme Court.

In its original opinion in the case of Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S. W. 539, the Supreme Court said:

"We are of opinion that the evidence as to the reputation of Isom Parmer would have been inadmissible if witness had been present at the trial."

On motion for rehearing in this case (103 Tex. 94, 124 S. W. 85) the Supreme Court withdrew that holding, stating that it was not necessary to a decision of the point under consideration. As already shown, in later refusing the writ of error in the Hanks Case, we are persuaded that the Supreme Court thought the Court of Civil Appeals was correct in its decision.

As so well said by the court in case of Insurance Co. v. Sparks, 38 Okl. 398, 132 Pac. 1094, 49 L. R. A. (N. S.) 729:

"It is a far safer rule that, in conformity to the general rules of evidence in civil cases, each transaction should be ascertained by its own circumstances, and not by the character of the parties."

But, even if all the testimony before the court in the case at bar was admissible, it is, in our opinion, still insufficient to raise the issue of forgery of the deed from Montgomery to Moore.

For other cases bearing upon the character of circumstantial proof required to establish forgery, we refer to the following: Ricard v. Williams, 7 Wheat. 59, 5 L. Ed. 398; Turner v. Hand, 3 Wall. Jr. 88, Fed. Cas. No. 14257, 22 A. & E. Ency. Law, 1282.

It follows, from what has been said, that we think the Houston Oil Company entitled to a judgment for the land as the owner of the so-called junior record title, even though the Beresford judgment be declared invalid, and that the judgment of the district court should be affirmed for this reason.

We now come to a consideration of the claim by plaintiff in error that, irrespective of the record titles, it has a title under the statute of limitation of five years. It was upon this theory that the district court instructed the jury to return its verdict for plaintiff in error. Does the record show, as a matter of law, that the Houston Oil Company had, at the time of the institution of this suit, acquired title to this league under the five-year statute? The Houston Oil Company had been in possession of portions of this league at various times for many years. The record shows payment of taxes by it and its predecessors in title on the league of land from the time when Hardin county was organized in 1859 to the time of trial. The record on payment of taxes seems silent prior to 1859. The company had deeds of record into itself, covering the whole league, from and after 1901. Consequently, the only question for our consideration, in ascertaining whether or not it had acquired title by the five year statute, is the one of possession. Upon this point, it appears that in 1906 one Cockerham and his wife, who had gone on the league as trespassers in 1903 and settled thereon, entered into the following lease contract with the Houston Oil Company, to wit:

"The State of Texas, County of Hardin.

"Know all men by these presents that we H. J. Cockerham and M. A. Cockerham, wife of the said H. J. Cockerham, of the county of Hardin, state aforesaid, in consideration that the Houston Oil Company of Texas, a corporation duly incorporated and existing under and by virtue of the laws of the state of Texas, with its principal office in the city of Houston, Harris county, Tex.. now owning in fee simple the following described tract or parcel of land, to wit: All of the D. C. Montgomery league of land lying and being situated in Hardin county, Tex.—and is desirous of placing a tenant up-

on said land for the purpose of protecting the same and having it guarded against trespassers and preventing any and all persons from cutting and removing the timber now situated, standing and growing thereon, and for and in consideration that we are to use and enjoy until the 1st of January, A. D. 1931, the improvements situated thereon, for farming use only, free of charge or rental, we, H. J. Cockerham and M. A. Cockerham, husband and wife as aforesaid, do hereby acknowledge our tenancy under the above-named company and obligate and bind ourselves to use said land for farming purposes only until the 1st day of January, 1931, and that we will not cut nor destroy any timber thereupon, and as agents and tenants as aforesaid, will prevent any and all trespasses from others, of whatever nature, upon said land and timber, and at the expiration of the above-specified time, to wit, January 1, 1931, we will vacate, deliver up, and turn over the above-described premises unto the said company, their successors or assigns, in as good and perfect condition as they are now, free from all charges, costs, expenses, or delay to it, the said company, whatsoever.

"In testimony whereof we hereunto set our hands this 6th day of June, A. D. 1906.

"[Signed]   H. J. Cockerham
                          her
"M. A.    X   Cockerham.
                        mark

"Duly acknowledged by H. J. Cockerham and his wife, M. A. Cockerham, before J. E. Crawford, notary public Hardin county, Tex., on June 6, 1906.

"Filed for record June 9, 1906, at 11 o'clock a. m. and duly recorded June 26, 1906, at 11 o'clock a. m. in Deed Records of Hardin County, Tex., at Book Vol. 40, on pages 156 and 157, by F. W. Tebbs, clerk of the county court of said Hardin county, Tex."

As will be seen, it is conceded that this lease was filed for record on June 9, 1906, in Hardin county, and this suit was first instituted by the oil company on July 6, 1914. It is also admitted that the Cockerhams kept living on the survey continuously, as tenants of the oil company, from 1906 to the time suit was filed, which was much more than five years.

The Court of Civil Appeals, in its opinion, beginning near the middle of the second column on page 799 of 186 S. W., and ending near the middle of the second column on page 801 of said volume, sets out and analyzes the testimony showing the nature and extent of the possession of the land by the Cockerhams. We content ourselves with referring to that portion of the opinion, as our opinion herein is already exceedingly lengthy.

Immediately after discussing the facts above referred to, the Court of Civil Appeals discusses its views of the law of limitation as applied to this case. Briefly, it held, in the first place, as follows:

"The general rule is that, where one enters under color of title into the actual occupancy of a part of the premises described in the instrument giving color of title, his possession is not considered as confined to that part of the premises in his actual occupancy, but he acquires possession of all of the land embraced in the instrument under which he claims. Porter v. Miller, 84 Tex. 204, 19 S. W. 467; Talliaferro v. Butler, 77 Tex. 578, 14 S. W. 191; Porter v. Miller, 76 Tex. 593, 13 S. W. 555, 14 S. W. 334; Evitts v. Roth, 61 Tex. 81; Cantagrel v. Von Lupin, 58 Tex. 570; Texas Land Co. v. Williams, 51 Tex. 51."

Under above rule, we take it that if the oil company had, through its own officers, actually settled on the tract and occupied a portion of it, the possession would have constructively attached to the entire league. And, as we construe the opinion of the Court of Civil Appeals, it entertains the further view that such possession can be acquired by the oil company through a tenant, provided the lease is not a restrictive one. Upon this point, the Court of Civil Appeals held:

"A more careful examination of the authorities and evidence in this case leads us to the conclusion that this lease is restrictive in its nature, and falls within the rule announced in the Kimball case, and therefore cannot be made the basis upon which to extend constructive possession to the entire league."

The Kimball Case just referred to can be found in 103 Tex. 94, 122 S. W. 539, 124 S. W. 85. We have carefully considered that case and do not think a proper construction of it constitutes the Cockerham lease in suit a restrictive one. Our views in this connection have been so well stated by Justice Reese in the case of Frazier v. Houston Oil Co. (Tex. Civ. App.) 161 S. W. 20, that we content ourselves by referring to that case. The Frazier Case did not reach the Supreme Court on writ of error, and we find only one other Texas case taking a different view to that adopted by that court in construing the Kimball Case, supra. We refer to the case of Niles v. Houston Oil Co. (Tex. Civ. App.) 191 S. W. 748, in which the Court of Civil Appeals at Beaumont followed its own ruling made in the case at bar about six months prior thereto. It is interesting to note that the Supreme Court granted a writ of error in this case of Niles v. Houston Oil Co., noting that it was inclined to think the decision in conflict with Frazier v. Houston Oil Co., supra.

The holding of the Beaumont Court of Civil Appeals, so construing the Kimball Case, has also been repudiated by the Court of Civil Appeals at Galveston in the case of Hanks v. Houston Oil Co. of Texas, 173 S. W. 635, and Word v. Colley, 173 S. W. 629. It is worthy of note that the Supreme Court refused a writ of error in each of these cases.

The case of Niles v. Houston Oil Co. has not been decided by the Supreme Court, and we do not know how it will settle the con-

flict between it and the Frazier Case; but we have decided to follow the latter, because it has, at least apparently, had the negative approval of the Supreme Court in the refusal of writs of error in the Hanks and Colley Cases, just before cited.

The Court of Civil Appeals, eliminating the Cockerham lease aforesaid, as being a restrictive one, held that the evidence, as quoted by us, did not show actual possession of the entire league by Cockerham sumcient, as a matter of law, to satisfy the requirements of the five year statute. Therefore it said that issue should be submitted to the jury upon another trial.

In deciding this last point, as well as its construction of the lease contract as a restrictive one, the Court of Civil Appeals admits it is in conflict with the decision of the Court of Civil Appeals in the Hanks Case, supra.

We think the Court of Civil Appeals correct in this last statement. If the decision in the Hanks Case is correct, and a writ of error was refused in it by the Supreme Court, and the land thus finally awarded to the company, we think the oil company acquired title under the Cockerham lease and his occupancy thereunder. The leases and facts in the two cases relative to possession are almost identical. The trial court, in each case, held that the record showed a title under the five year statute, as a matter of law. Upon the strength of this Hanks Case (Tex. Civ. App.) 173 S. W. 635, and the even stronger case, if possible, of Word v. Colley (Tex. Civ. App.) 173 S. W. 629, as well as the Frazier Case (Tex. Civ. App.) 161 S. W. 20, plaintiff in error confidently asserts that it has acquired this league under the five-year statute. We think so, and for this further reason recommend an affirmance of the judgment of the trial court. As before stated, the Supreme Court refused a writ of error in the case of Word v. Colley, supra, as well as the Hanks Case.

We have found no Supreme Court cases, which as we construe them, repudiate or overrule the Frazier, Hanks, and Colley Cases. Not only so, but by refusal of writs of error, we think the Supreme Court is in accord with at least two of them. If so, then the trial court correctly instructed a verdict on this limitation issue in the case at bar.

Counsel for defendant in error earnestly insist that, under the facts in this case with reference to Cockerham's possession, the opinion of the Supreme Court in case of Holland v. Nance, 102 Tex. 177, 114 S. W. 346, is conclusive authority against the action of the trial court herein. We have carefully considered the Holland v. Nance opinion, and we do not think it has any bearing upon this case In the Nance Case, the claimant actually resided on one survey and accidentally erected his fence slightly over the line on the Latham survey and included a few varas of the Latham in his inclosure. This case pronounces what has been termed the doctrine of "encroachments." Under the admitted facts therein, Nance claimed none of the Latham prior to later receiving the deed thereto. After procuring a deed to the Latham he did not extend his possession of the Latham. The only thing he did was to record a deed. The court said it was difficult to see how the recording of his deed would enlarge his possession. We quite agree with this view. A deed of the ordinary kind shows no possession, nor does it explain one's possession, or the extent of one's occupancy. In this connection, we quote as follows from the case of Holland v. Nance, supra:

"The record of a deed does not constitute possession of the land, and, in fact, is not notice of possession. When a party has actual possession of a portion of a tract of land and has a deed for it upon record, that record is notice to all those who claim in opposition to him as to the character of his claim and the extent of it, but without possession adverse owners are not charged with notice of the fact that the deed is upon record or that any claim is made to the land. Before Nance procured the deed and placed it upon record, his possession meant to the true owner of the Latham survey that Nance was claiming nothing beyond his fence. After the recording of the deed, the possession was the same and gave no notice of a greater claim."

In the case at bar, Cockerham was actually in possession of a portion of this league. He did not live on two surveys. He went there in 1903. The extent of his claim until 1906, when he contracted with the oil company, was indefinite. His holding from 1903 to 1906 was adverse to the oil company, as well as to all others. See Glover v. Pfeuffer (Tex. Civ. App.) 163 S. W. 984, and in which case writ of error was denied by the Supreme Court. For that reason, we do not think the nature of Cockerham's possession prior to 1906 can have any bearing upon the title of the oil company.

In 1906, he attorned to the title of the oil company and entered into a lease contract with it. He was then in possession as a tenant, and possibly as an employé, of the oil company. Under the authority of Holland v. Nance, we think when the true owner found Cockerham in actual possession in 1906, or thereafter, of at least a portion of this league of land under the authority of the lease contract of record, that such record constituted notice to all of the character of his claim and the extent of his possession. In other words, it is the duty of owners of land to watch their property, and, if one is found in possession, the natural inquiry is as to the authority under which he has taken possession. The deed records would be the first place for investigation. Of course,

if there was no actual possession, there would be no duty of investigating the deed records to ascertain the nature and extent of possession. This Cockerham lease as recorded would have put any one upon immediate notice that the tenant was acquiring title to the whole league for his lessor and claiming adversely to all others.

. If the Supreme Court had intended that the case of Holland v. Nance should be construed as counsel for defendant in error here contend, we find it difficult to explain why, several years later, it refused writs of error in the Hanks and Colley Cases, supra. In the former case, the Court of Civil Appeals said that the possession of the Houston Oil Company, through a tenant, under a lease identical with the one at bar and under very similar facts, "drew to it the constructive possession of the claimant to the whole."

Counsel for defendant in error also refer, with apparent confidence, to the case of Walker v. Knox (Tex. Civ. App.) 191 S. W. 730, in which the Court of Civil Appeals held contrary to the views said counsel are here contending for, as said counsel allege. They say that the Supreme Court differed with the Court of Civil Appeals in the Walker Case, as shown by its notation in granting a writ of error therein. Said notation was to the effect that the court regarded the decision as substantially in conflict with the case of Holland v. Nance.

We think the Walker Case is easily distinguishable from the case at bar, and for that reason do not think the granting of this writ had any material bearing on the case at bar. It may be that the Supreme Court, in finally deciding the Walker Case, will enlarge and explain its former ruling in Holland v. Nance in such a way as to affect the case at bar. We would have been glad to have the benefit of a decision by the Supreme Court in the Walker Case before making this report, but the case is undecided and we have concluded to proceed without this advantage.

The possession of Cockerham, as shown by this record, would, in our judgment, have matured title for him under the five-year statute, if he had gone into such possession under a deed of record and made the requisite payment of taxes. If we are correct in this, we fail to see any reason why his possession would not inure to the benefit of the Houston Oil Company, whose tenant he was, and especially when the nature, character, and extent of his actual possession under the Houston Oil Company was of record and open to the inspection of the public, through the lease hereinbefore set out.

For the various reasons above stated, or either of them, we think the judgment of the district court should be affirmed.

Therefore we recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

CURETON, C. J. Approving the conclusion of the Commission of Appeals that plaintiff in error had the superior title to the land in controversy, regardless of the question of title by limitations, it is ordered that the judgment of the Court of Civil Appeals be reversed and that of the district court be affirmed.